**UNITED STATES of America,**

v.

**Joy SARTIN, Defendant.**

**No. CR 01–347–PA.**

United States District Court,
D. Oregon.

March 19, 2003.

Michael Mosman, United States Attorney, Scott M. Keriñ, Assistant United States Attorney, Portland, OR, for United States of America.

Nancy Bergeson, Assistant Federal Public Defender, Portland, OR, for Defendant.

## OPINION

PANNER, District Judge.

Defendant Joy Sartin is charged with intent to distribute at least 50 grams of crack cocaine, and possession of a firearm in furtherance of a drug trafficking crime. On January 22, 2003, I conducted an evidentiary hearing and heard argument on Defendant's motion to suppress the drugs seized at her apartment and any statements she made to police following the seizure. For the reasons that follow, I now grant the motion.

### Background

Defendant Joy Sartin was in a personal relationship with Turon Walker. Her mother Susan Dix was in a relationship with Turon's brother Masico Walker.

On July 13, 2001, the police obtained a warrant to search Sartin's apartment at 413 SE 111th Avenue in Portland. They seized a "bong," some "roaches" (i.e., remnants of marijuana joints), a small quantity of marijuana, and $2,450 in cash. Inside some pairs of rolled up socks in the hall closet, the police found several 1–ounce bags of crack cocaine and tiny cellophane bags. They found a scale in the kitchen cupboard. They also seized a .40 caliber handgun and .40 caliber ammunition. The police did not find a 9mm handgun or 9mm ammunition, the stated object of the warrant. Sartin said the gun and drugs belonged to her.[1]

### Discussion

**A. Was there Probable Cause to Support the 111th Avenue Warrant?**

**1. Legal Standards**

 The affidavit in support of the warrant must furnish a " 'substantial basis' for concluding probable cause existed based on the totality of the circumstances." *United States v. Mendonsa*, 989 F.2d 366, 368 (9th Cir.1993). In deciding whether to issue a warrant, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

 In reviewing the validity of a search warrant, the court is limited to the information and circumstances contained within the four corners of the underlying affidavit. *United States v. Bertrand*, 926 F.2d 838, 841 (9th Cir.1991).

 A magistrate's finding of probable cause is accorded deference. *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1989). Nevertheless, if a "magistrate's probable cause determination reflect[s] an improper analysis of the totality of the circumstances," the district court may find the warrant invalid. *Id.* at 915, 104 S.Ct. 3405.

Evidence bearing on the veracity of an informant, and his basis of knowledge, is considered together with other relevant evidence in making the probable cause determination based on the totality of the circumstances. *United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir.1986).

**2. Analysis**

Even after many hours of examination, it is difficult to fully comprehend the 41–page, single-spaced, search warrant application. The warrant authorizes the police to search for, and seize, evidence "of the above listed crimes," but there is no such list. At oral argument, the government urged the court to refer to the Affidavit in support of the search warrant, but there is no document as such. There is a document entitled "Addendum to Affidavit in Support of Search Warrant." Attached to it is an "Affidavit in Support of Search Warrant" explaining why there is probable cause to believe that evidence of certain crimes will be found at 2731 SE 84th Avenue, *not* at Joy Sartin's apartment on SE 111th Avenue. I will generously construe the "Addendum" as the affidavit to support

---

1. The materials in support of the warrant include many pages of additional information that I read and considered, but omitted here to keep this opinion to a reasonable length.

the search warrant for SE 111th Avenue, and the "Affidavit" as a source of additional background information.

The police gave two reasons for searching Sartin's apartment. Both were premised upon conduct by Turon Walker, not Joy Sartin. First, the police said they expected to find a 9mm gun in Sartin's apartment, which Turon could not lawfully possess because he previously had been convicted of a felony. Second, the police claimed they were searching for proof that Turon was violating the sex offender registration law by residing at an address other than the one listed on his registration.

I have no idea what 9mm gun the 111th Avenue warrant application refers to, or why there was reason to believe it would be found in Sartin's apartment. The warrant application discusses the Hassalo Street shooting in great detail, as well as the incident at the bar, but never asserts that there is probable cause to believe evidence regarding either event will be found at Sartin's apartment. On the contrary, the "Affidavit" says there is probable cause to believe that such evidence will be found at 84th Avenue. The list of crimes in the Addendum conspicuously omits any offenses associated with the two shooting incidents, which offenses had been listed in the application for the 84th Avenue warrant.

The Addendum also discusses at length a 9mm handgun that Turon's former girlfriend, Ayanna Edwards, had reported stolen, leaving the impression this was the same 9mm gun used in the shooting incidents. Careful scrutiny of the warrant materials reveals that Edwards' gun is a Smith & Wesson model, but ballistics evidence indicated that the gun used in the two shooting incidents was a Glock, hence it was almost certainly not the same gun. This discrepancy was not called to the attention of the judge who signed the warrant. It becomes apparent only if the reader carefully compares the information in the "Addendum" with the information in the "Affidavit," a very time-consuming process.[2]

The warrant application contains no evidence that Turon committed either shooting. It is not even clear whether any shots were fired by the occupants of the Buick, or the circumstances. Witnesses reported seeing multiple shots fired at the Buick, not from it. In any event, the police theory is that the person(s) who fled the Buick then placed a call to Turon's cell phone from a nearby payphone, seeking a ride. Unless that person was calling himself, it was not Turon. Nor does Turon match the description given by witnesses to the incidents, or the DNA on either the felt hat recovered at Hassalo Street or the baseball cap found in the Buick.

The government speculates that Turon could have hidden a gun on behalf of someone involved in the shootings. The warrant materials furnish no evidence of that. No one reported seeing Turon in possession of *any* gun at any time, let alone the particular gun the police were searching for. Furthermore, the search of Joy Sartin's apartment occurred two months after the last shooting incident. By then, the gun could have been anywhere. Warrants had already been served at two other locations, giving the perpetrator ample warning and time to dispose of the gun.

There also is insufficient evidence that Turon had Ayanna Edwards' gun. There is only Edwards' report that the gun was stolen (which the police suspected was

2. Sometime after 5:00 p.m. on the evening of July 13, 2001, the police undertook to locate a judge to review the 41–page single-spaced warrant application. The documents then had to be delivered to his home. The warrant was signed at 7:03 p.m. The judge who issued the warrant had no prior familiarity with this case.

false), her speculation that Turon had taken it, and her assertion that it had vanished sometime during the seven months before the warrant was executed. The evidence supporting that date was shaky and the gun might have been taken much earlier. Edwards failed to keep her appointment with the police to provide additional information, nor did she meet with them later. No one ever reported seeing Turon with Edwards' gun or with any gun.[3]

The warrant materials also give little reason to believe that a 9mm gun would be found at Joy Sartin's apartment, and in fact it was not. There was no evidence a gun had been seen at Sartin's apartment, or that she was in possession of a gun. The government argues that a girlfriend's house is one place Turon might hide a gun if he had one. Perhaps so. Turon might also have hidden a gun at his mother's house, or his aunt, or his cousin, or any of his friends. However, the Fourth Amendment does not authorize searching the home of every person that Turon visited during the months following the shooting, as the government suggested at oral argument. At some point, the rights of third parties must prevail over a fishing expedition, particularly when there is little evidence Turon had a gun, let alone that he was hiding it somewhere.

The other stated justification for the search of Joy Sartin's apartment was to find proof that Turon Walker no longer resided at 8715 North Chase Avenue, which would be a violation of his sex offender registration. I find this was a pretext to search Joy Sartin's apartment for drugs. Prior to applying for the search warrant, the police had already arrested Turon Walker for violating the sex offender registration statute, ORS 181.599, and he had admitted his guilt. The police already had ample evidence to secure a conviction. The government argues that the police can never have too much evidence. That is a weak excuse for invading the home and privacy of a third party. Notably, the police never went to Turon Walker's registered address and asked who lived there, or spoke to the neighbors or landlord.[4] It is also telling that the search of Joy Sartin's apartment was initiated and conducted by the gang and narcotics unit, not the sex offender squad.

The police claim they suspected Turon had two residences, 84th Avenue and SE 111th Avenue. That is beside the point. If Turon was not residing at his registered address, then he was in violation of ORS 181.599, regardless of how many "residences" he allegedly had. In any event, the warrant application contains insufficient evidence that Turon Walker was living at Joy Sartin's apartment. Virtually all information in the application was to the contrary.

A Confidential Informant reported that both Turon and Masico Walker lived at 2731 SE 84th Avenue, and had resided

---

**3.** An empty holster was found at 84th Avenue. It is unclear if it belonged to Turon, Masico, or another person. If it was Turon's, there is no evidence of when he acquired it or if he was currently using it. He could have owned it for years. Mere possession of a holster does not violate ORS 166.270. The warrant application contains no evidence that Turon was seen wearing a holster. Shortly before obtaining the warrant for Sartin's apartment, the police searched Turon and his vehicle. They found no guns, ammunition, or holsters.

**4.** The Addendum states that, during a two month period, the affiant had *"driven by* [the registered address] on at least three (3) occasions" but had not seen Turon Walker or his vehicle there. (emphasis added). The affiant makes no mention of stopping, let alone making any inquiries of the tenant, landlord, or neighbors, or of conducting any surveillance. This is in stark comparison to the extensive surveillance and the inquiries that were made at 84th and 111th Avenue.

there for the past six months. Turon had briefly moved out with Joy, but that arrangement lasted only about a week. Turon was now regularly "spending the nights" at 84th Avenue.

When police searched the 84th Avenue house, Ervan Johnson—who was there to watch a child—stated that Turon Walker lived at 84th Avenue, and Masico Walker was "in and out." The police found extra-large men's clothing at 84th Avenue "consistent with fitting a person of Turon Walker's build." They had been watching the 84th Avenue house for months, and often saw Turon Walker there along with vehicles registered to him.

Ayanna Edwards told the police Turon resided on SE 84th Avenue. She had an interest in knowing the whereabouts of the father of her children. When the police searched Susan Dix's residence, they found a speed-dial entry for "Mase/Turon Home" containing the phone number for 84th Avenue.

Randy Brown, who managed the apartment complex on 111th Avenue, told police that Joy Sartin was the only person residing in the apartment. When asked if Joy had a boyfriend, Brown said "there were multiple black males ... that hung around" Sartin's apartment. Brown described one individual she believed was Sartin's boyfriend, and the vehicles he drove. The description matched Turon Walker. Brown said "she sees this person at the apartment everyday, but that he has his own place." Brown did not know if Turon had ever spent the night there, but was sure he "does not spend the night most of the time."

Prior to applying for the 111th Avenue warrant, the Deputy District Attorney and the affiant concluded they already had probable cause to arrest Turon on the sex offender registration charge. The police stopped Turon Walker and searched his person and vehicle. They did not find any guns or drugs, but they did find documents showing Turon resided at 2731 SE 84th Avenue. They arrested Turon for failing to notify the Oregon State Police that he was no longer residing at his registered address on North Chase Avenue. Turon admitted that he didn't live at the Chase Avenue address, and was now residing at 2731 SE 84th Avenue and an address at SE 162nd Avenue & Halsey Street. The police had this information *before* they applied for the warrant.

The police asked Turon for consent to search Joy Sartin's apartment. Walker responded that he didn't live there, and had no authority to consent to a search. Turon admitted he often visited Joy's apartment, but "does not stay the night."

The police also stopped Joy Sartin and searched her person and vehicle. Again, they found no evidence of guns, drugs, or other crimes. They did find documents belonging to Turon Walker in the vehicle, which confirmed that his mailing address was 2731 SE 84th Avenue. Sartin declined to consent to a search of her apartment, and told the police that Turon did not live there.

To counter the evidence showing Turon resided at 84th Avenue, the government offers a laundry list of items, but they are irrelevant, redundant, or of little probative value. The strongest "evidence" is that, at a date unknown, an officer spoke to an anonymous "neighbor" whom the officer did not know and whose reliability could not be vouched for. The neighbor thought "a black couple" lived in Sartin's apartment and had been home the previous night. There is little in the warrant application that establishes this informant was in a position to know who lived in the apartment or which men (if any) regularly spent the night there, or to know more than the apartment manager who had a

strong interest in monitoring events at the units she managed.

■ The government also argues that vehicles associated with Turon were seen at 111th Avenue. One vehicle, nominally registered to Turon, was actually driven by Joy Sartin. Evidence that Turon and his truck were seen at his girlfriend's apartment, or that he may have spent the night there on occasion, is not inconsistent with evidence that he visited her often but did not live there. That falls far short of establishing that this was Turon's residence, especially given all the evidence he resided at 2731 SE 84th Avenue—evidence the police had *already* decided was sufficient to arrest Turon Walker for violation of the sex offender registration law.[5]

■ Ultimately, the warrant application contains a lot of irrelevant information and "based on my training and experience" boilerplate. What it lacks is facts from which a judge could find probable cause to justify issuance of the warrant.

## B. *The Good Faith Exception Does Not Apply*

■ This is not a case where the warrant was invalidated by a technical defect, though such defects certainly were present. Nor are the police being penalized for a mistake made by the magistrate. There was not probable cause to support the warrant, and a reasonable officer would know that. The defect went unrecognized by the magistrate only because the materials supporting the warrant include a forest of irrelevant and sometimes misleading information that makes it difficult to ascertain what crimes were being investigated or evidence sought.

In addition, the Roselawn Street warrant was procured, in part, by a representation that an officer saw a spot of blood on the carpet and feared someone was injured, which the police knew was almost certainly not true.[6] The 84th Avenue warrant was procured, in part, by a representation that Masico Walker had not reported his change of address. In fact he had, but the affiant failed to verify Masico's registration status until hours after the warrant was executed. At both 84th Avenue and 111th Avenue, the principal object of the search appears to have been drugs, which was outside the scope of the warrant. This is not a good faith case.

## C. *The Search Exceeded the Appropriate Scope of the Warrant*

Defendant contends the search inside the socks exceeded the appropriate scope of the warrant. I agree.

■ A warrant must describe with "particular[ity] . . . the place to be searched and the persons or things to be seized." This prevents "general, exploratory rummaging in a person's belongings" and helps to ensure that a search is confined to particularly described evidence relating to a specific crime for which there is probable cause. *Andresen v. Maryland,* 427 U.S.

**5.** Even assuming the police had probable cause to search Sartin's apartment for evidence that Turon Walker had a second residence there, the government has not attempted to justify searching inside the socks on that basis. Rather, the only justification given was that the officer was searching for ammunition or shell casings. The warrant "must be no broader than the probable cause on which it is based." *United States v. Weber,* 923 F.2d 1338, 1342 (9th Cir.1990).

**6.** Before obtaining the warrant, the police had searched the Buick, the crime scene, and the path where the car's occupant(s) would have fled, but found no evidence anyone had been injured. Police had also been in Dix's home and not seen a trail of blood or injured person. The unsigned and undated letter that Masico allegedly wrote to himself was also used to justify a search for drugs at Roselawn Street, though the letter said the drugs were at "84th Avenue."

463, 479, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In some circumstances, the warrant may describe only the types of items to be seized, but must do so with sufficient particularity. *See United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). "Including, but not limited to" language may be permissible if it is clear that the police may search and seize only certain kinds of items related to a specific crime or type of criminal activity. *See United States v. Reeves*, 210 F.3d 1041, 1046 (9th Cir.2000); *United States v. Washington*, 797 F.2d 1461, 1472 (9th Cir. 1986).

The warrant for Joy Sartin's apartment authorized the police to search for and seize "[a]ny 9mm caliber semi-automatic firearm." The police do not claim they expected to find a 9mm semi-automatic gun inside the rolled up socks.

The government argues that ammunition might have been hidden in the socks. Nothing about the appearance or feel of the socks would have led an officer to believe a 9mm magazine was hidden inside. The weight, shape, and density were all wrong. What the police were hoping to find inside those socks was obviously drugs, but the warrant did not authorize them to search for drugs.

The government also suggests that a solitary bullet or shell casing could have been hidden in the socks. Ignoring the absurdity of someone keeping a used shell casing for all those months, hidden in a pair of socks, such a search would fall outside the appropriate scope of the warrant. The government correctly observes that, in addition to the 9mm gun, the warrant authorized seizure of:

> "... other *evidence of the above listed crimes*, including, but not limited to, all firearms, firearms related accessories such as cleaning kits, holsters, rounds of ammunition, magazines, bullets, shell casings, firearm boxes/cases, lockboxes, trigger locks, safes..."

(emphasis added). .

However, the government then ignores the critical limiting language: "other evidence of the above listed crimes." As a threshold matter, there are no "above listed crimes," which makes the language that follows superfluous. The government asks the court to go beyond the four corners of the warrant and read into it the list of crimes in the Addendum, namely, failure to register as a sex offender and felon in possession of a gun. That solves one problem but creates another.

Many items after the "including, but not limited to" language are not evidence of those two crimes. Rather, this language was copied from the 84th Avenue warrant, which sought evidence regarding a different set of crimes, specifically, the Hassalo Street shooting incident. This is of particular concern because some of the enumerated items, such as a 9mm shell casing, are very small, while other items are very broadly phrased. That could effectively allow the police to search anything and everything and then seize the contents pursuant to the "plain view" doctrine. This might run afoul of the prohibition upon "general warrants." Consequently, it is imperative that the list of items subject to seizure be read in the context of the "above listed crimes" limitation.

A bullet or shell casing is not "evidence of the above listed crimes." ORS 166.270 prohibits possession of a "firearm" by certain persons. That term is defined in ORS 166.210(2) (1999 ed.) as "a weapon, by whatever name known, which is designed to expel a projectile by the action of powder and which is readily capable of use as a weapon." The statute outlaws possession of a *gun*, not mere shell casings, individual bullets, trigger locks, safes,

**1162**

cleaning kits, or holsters. Furthermore, this was Joy Sartin's apartment, and ORS 166.270 does not prohibit her from possessing any of those items.

■ The police were supposed to be searching for a 9mm gun. They admittedly were looking for something else when they searched inside the socks. I find that search exceeded the scope of the properly construed warrant.

**D.** *The Drugs Were Not in Plain View*

■ Police may seize an item in plain view, that is not listed in the warrant, if its incriminating character is immediately apparent without conducting some further search of the object. *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

■ I find that the crack cocaine was not in plain view. From the outward appearance, this was nothing more than several rolled-up pairs of socks in a closet. Only after unrolling the socks, reaching inside, and removing the contents, did the incriminating nature become apparent.[7] The government does not argue, nor do I find, that there was anything inherently incriminating about the socks themselves.

**E.** *Any Contemporaneous Statements by Sartin Must Also be Suppressed*

■ When the police confronted Sartin with the drugs in her apartment, she allegedly stated that the drugs belonged to her. Those statements are "fruit of the poison

7. The photographs admitted as exhibits were taken after the socks had been unrolled and the drugs removed.

tree" that must also be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 484–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

*Conclusion*

Defendant's Motion (# 24) to Suppress Evidence and Statements is GRANTED.