**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

v.

UHURU NAVANDA CREWS,
  *Defendant-Appellee.*

No. 06-30414

D.C. No.
CR-05-00355-ALH

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, Chief Judge, Presiding

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

v.

EBONIQUE MANUS,
  *Defendant-Appellee.*

No. 06-30589

D.C. No.
CR-05-00400-GMK

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted
July 13, 2007—Portland, Oregon

Filed September 10, 2007

Before: Cynthia Holcomb Hall and Milan D. Smith, Jr.,
Circuit Judges, and Kevin Thomas Duffy,*
Senior District Judge.

*The Honorable Kevin Thomas Duffy, Senior United States District
Judge for the Southern District of New York, sitting by designation.

12045

Opinion by Judge Duffy

## COUNSEL

Stephen F. Peifer, Assistant United States Attorney, for appellant the United States of America.

Lisa Hay, Assistant Federal Public Defender, for defendant Uhuru Navanda Crews.

Francesca Freccero, Assistant Federal Public Defender, for defendant Uhuru Navanda Crews.

Raivio, Kohlmetz & Steen, P.C., by Andrew Kohlmetz, Esq., for defendant Ebonique Manus.

## OPINION

DUFFY, Senior District Judge:

Most of the arguments raised in these two cases arise from the execution of one search warrant at 6731 SE 82nd Avenue, Apartment 3 ("Apartment 3") in Portland, Oregon. As residents of Apartment 3, Uhuru Navanda Crews and Ebonique Manus ("Crews" and "Manus," or collectively "Defendants") continue to attack the validity of the underlying affidavit upon which the search warrant was based. Defendants argued below, and continue to argue, that the affidavit is so lacking in indicia of probable cause that no police officer could have reasonably relied upon it in good faith. The search warrant resulted in two indictments—one for each defendant—separately charging each with being a felon in possession of a firearm. The case against Crews (05-355-ALH) was assigned to Chief Judge Haggerty, and that against Manus (05-400-GMK) was assigned to Judge King. In each case, the defendant moved to suppress all evidence flowing from the warrant. Chief Judge Haggerty held a hearing on the motion. At the behest of the parties, Judge King relied upon the hearing before Chief Judge Haggerty. The district courts agreed with the Defendants' arguments and in each case ordered suppression of the evidence seized during the search and inculpatory statements made by Defendants as tainted fruits of an unlawful search. The Government appeals these orders, contending that there was probable cause supporting the search, and even if there was not, the good faith exception applies pursuant to *United States v. Leon*, 468 U.S. 897, 925 (1984).

### FACTS

At about 2:00 a.m. on July 2, 2005, a police officer attempted to pull Crews over for failing to properly signal a

turn while driving. Rather than comply, Crews, a convicted felon, increased his speed and then jumped from the vehicle in an attempt to elude the police. After a brief chase on foot, officers arrested Crews for attempting to elude the police pursuant to Section 811.540 of the Oregon Revised Statutes and for other state and city violations. After the officers advised Crews of his *Miranda* rights, Crews verbally waived them and admitted that he fled because of an outstanding arrest warrant in the state of Washington, a warrant that, unbeknownst to Crews, was non-extraditable. The officers impounded the car Crews had been driving, a 1985 Oldsmobile Cutlass registered to Manus, also a convicted felon, and registered to Manus's address at Apartment 3, 6731 SE 82nd Avenue, Portland, Oregon. Crews' arrest had taken place only a few blocks from that location. Neither the Portland Police Data System nor Crews's invalid drivers license listed the address of Manus's apartment as Crews's residence.

After conducting a sweep of the area where Crews was arrested, officers found a .22 caliber revolver under some shrubbery. As convicted felons, both Crews and Manus were forbidden from possessing a firearm. *See* 18 U.S.C. § 922(g)(1).[1] Because the car Crews had been driving was registered to Manus at Apartment 3, police officers focused their surveillance at that address for two days. On the first day, officers observed Crews walking within the complex where Apartment 3 is located and then leave with an unknown person in an unknown car that had been parked in the space reserved for Apartment 3. The next day, officers observed Manus walk from the area of Apartment 3 and leave in a Pontiac that had been parked in the space reserved for Apartment 3. Meanwhile, officers observed Crews walking from the complex and then return. After Manus returned, officers watched as Manus

---

[1]The relevant portions of 18 U.S.C. § 922(g)(1) states that "[i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . ."

and Crews emerged together from the area where the doorway to Apartment 3 was located. They then proceeded to walk back and forth from Apartment 3 to the Pontiac multiple times before eventually leaving together in the Pontiac, with Crews driving.

Based on these observations and his experiences and general knowledge of firearm possession, Officer Peter McConnell prepared an eight-page affidavit in support of a search warrant for Apartment 3, Crews's person, the Oldsmobile, and the Pontiac for evidence of the crimes of "attempting to elude police" and "felon in possession of a firearm." The warrant was issued on July 14, 2005, and permitted police officers to search Apartment 3 for .22 caliber ammunition, firearm cleaning kits, magazines, receipts and other evidence of firearm possession, as well as items of identification that would show dominion over the places searched.[2] Within fifteen minutes of receiving the warrant, police officers found and picked up Crews off the street near Apartment 3 and advised him of his *Miranda* rights, which Crews said he understood. Crews denied living at Apartment 3 and stated that he did not believe there to be any firearms there. Eventually, Crews was taken into custody.

The police officers then executed the search at Apartment 3. There, Manus stated that she and Crews had been living together at Apartment 3 for a month and a half, but that there were no firearms inside. Manus was then taken into custody. During the search of Apartment 3, officers discovered a .38 caliber derringer and ammunition inside of a bedroom dresser drawer containing women's undergarments. The officers also found Crews's wallet on top of that dresser. No evidence was found on Crews's person or in the automobiles.

---

[2]In addition to Apartment 3, the affidavit also permitted police officers to search the Oldsmobile, the Pontiac, and Crews's person.

The officers returned to the precinct and separately inter-
viewed Crews and Manus. Officer McConnell removed
Crews's handcuffs and reminded him that his *Miranda* rights
still applied, which Crews acknowledged. Crews proceeded to
admit having previously handled the .38 derringer, but said it
belonged to Manus and that he did not know she still kept it
at Apartment 3. Crews then stated that he did not live at
Apartment 3, but did admit that he stayed there about 70 per-
cent of the time, including the previous night.[3] Finally, Crews
confessed that he had possessed the .22 revolver that was pre-
viously found in the bushes. He said he kept it for protection
and that it was the primary reason that he attempted to elude
the police the previous night. As for Manus, after being
advised of her *Miranda* rights, she confessed to Officer
McConnell that the .38 derringer was hers and that she kept
it for protection.

Defendants were each indicted and charged with being a
felon in possession of a firearm in violation of 18 U.S.C.
§ 922(g)(1). Through counsel, Defendants both pled not
guilty. Crews moved to suppress his inculpatory admission of
possession of the .22 revolver and Manus moved to suppress
the .38 derringer seized as well as her admission of ownership
of the firearm. Defendants both argued that there was no
probable cause to search Apartment 3 and that the good faith
reliance exception did not apply. The district courts below
agreed and suppressed the .38 derringer and Defendants'
admissions as tainted fruit of an unlawful search. Addition-
ally, the district court in Crews's case found that the waiver
of his *Miranda* rights was not knowing and voluntary because
he was detained and interrogated in conjunction with an

---

[3]It was eventually revealed that both Crews and Manus were listed on
the lease agreement as co-lessees of Apartment 3. During oral argument,
Crews's counsel alluded to the fact that Crews, in fact, may not have been
a resident of Apartment 3. Such an argument does not help Crews, for if
it were true, Crews would be confronted with problems of standing to pur-
sue this appeal. However, as an undisputed resident of Apartment 3,
Manus does have standing to challenge the search and seizure.

invalid warrant. The Government now appeals these suppression orders, contending that there was probable cause to search Apartment 3, and that even if there was not, the "good faith reliance" exception applies, and that Crews's waiver was knowing and voluntary.

## STANDARDS OF REVIEW

We review the district courts' rulings on the motions to suppress and the validity of a search warrant de novo. *United States v. Adjani*, 452 F.3d 1140, 1143 (9th Cir. 2006), *cert. denied, Reinhold v. United States*, 127 S.Ct. 568 (2006). "A magistrate judge's finding of probable cause is entitled to great deference and this court will not find a search warrant invalid if the magistrate judge had a 'substantial basis' for concluding that the supporting affidavit established probable cause." *United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994), *cert. denied,* 513 U.S. 1119 (1995). Furthermore, "[i]n borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." *United States v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990) (citation omitted). We also review de novo the district courts' application of the good faith reliance exception. *United States v. Kurt*, 986 F.2d 309, 311 (9th Cir. 1993). Finally, we review for clear error a district court's finding of whether a defendant has made a knowing and intelligent waiver of his *Miranda* rights. *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998).

## DISCUSSION

I.  *The Affidavit Was Not So Lacking in Indicia of Probable Cause as to Render Reliance Objectively Unreasonable*

[1] It is well settled that evidence seized during an unlawful search cannot constitute proof against the victim of the search. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). This "exclusionary rule" extends to both direct and indirect products of such unlawful searches. *Id.* Therefore, the Supreme

Court has held that "verbal evidence which derives so immediately from an unlawful entry . . . is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion." *Id.* at 485. The Government has conceded that Defendants' statements and the discovery of the .38 derringer derived from the search warrant and its execution. Thus, if the search was unlawful, the Government concedes that Defendants' statements and the firearm should be suppressed. However, in *United States v. Leon*, the Supreme Court set out an exception to the exclusionary rule for a search conducted in good faith reliance upon an objectively reasonable search warrant. 468 U.S. 897, 925 (1984).[4] Before embarking on the exercise of determining whether the affidavit supported probable cause, we may proceed directly to the issue of whether there was good faith reliance. *See id.* at 923-25 (recognizing that courts have discretion in deciding whether to address the issue of probable cause before turning to the issue of good faith reliance). For the reasons below, we find the good faith reliance exception applicable and therefore need not address whether the affidavit demonstrated that Crews was anything but a casual social guest.

[2] For the good faith reliance exception to apply, the officers must have relied on the search warrant in an objectively reasonable manner. *United States v. Clark*, 31 F.3d 831, 835 (9th Cir. 1994). The affidavit "must establish at least a color-

---

[4]Search and seizure laws are designed to punish police for improperly compromising defendants' rights for the sake of investigatory economy. The Supreme Court has stated that the exclusionary rule's "prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra*, 414 U.S. 338, 347 (1974). The good faith reliance exception recognizes that if "the officer is acting as a reasonable officer would and should act in similar circumstances[,] [e]xcluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty." *United States v. Leon*, 468 U.S. 897, 920 (1984) (citation omitted). Therefore, punishment is unwarranted where there can be no deterrent effect.

able argument for probable cause" for the exception to apply. *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006). Therefore, if there is a colorable argument that the search of Apartment 3 was supported by probable cause, the officer's reliance on the search warrant was objectively reasonable. This ends the inquiry without having to belabor the issue of whether the affidavit stated probable cause.

There are four circumstances in which the good faith exception does not apply because reliance is *per se* unreasonable: (i) where an affiant misleads the issuing magistrate or judge by making a false statement or recklessly disregarding the truth in making a statement; (ii) where the magistrate or judge wholly abandons her judicial role in approving the warrant, acting only as a "rubber stamp" to the warrant application rather than as a neutral and detached official; (iii) where the warrant is facially deficient in detail as to the place to be searched or the things to be found that the officers could not reasonably presume it to be valid; or (iv) where the affidavit upon which the warrant is based is so lacking in indicia of probable cause that no reasonable officer could rely upon it in good faith. *Leon*, 468 U.S. at 923-26.

The district courts below found that the good faith reliance exception was inapplicable because the affidavit was so lacking in indicia of probable cause that the police officers should have known that the search was illegal and because the officer's affidavit misled the issuing state judge. Specifically, the courts found that the officers were objectively unreasonable in believing they would find additional evidence of the crime of "felon in possession of a firearm" because the affidavit did not sufficiently link Crews to Apartment 3. We disagree. For the following reasons, the district courts erred in failing to apply the good faith reliance exception.

**[3]** On its face, the affidavit was not so lacking in indicia of probable cause as to render reliance upon it objectively unreasonable. For probable cause, an affidavit must establish

a reasonable nexus between the crime or evidence and the location to be searched. *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002). It need only be reasonable to seek the evidence at the location indicated in the affidavit. *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993). The affidavit showed indicia of such a reasonable nexus between the crime of "felon in possession of a firearm" and Apartment 3 by demonstrating a sufficient link between Crews, Manus, firearm evidence, and Apartment 3 such that an officer could have reasonably relied upon it in good faith.

**[4]** The affidavit stated that police officers sought evidence of the crime of "felon in possession of a firearm" and that Crews and Manus were convicted felons forbidden from possessing firearms. The affidavit also stated that Crews and Manus had convictions for delivering and manufacturing controlled substances and that Officer McConnell's training and experience has shown that persons that sell controlled substances often possess firearms for protection. It further explained that on the night Crews was arrested for attempting to elude police, he had been driving Manus's car which was registered to Apartment 3. It stated that the police had reason to believe that the .22 revolver discovered where Crews had been arrested had been discarded by Crews during the foot chase and that they had reason to believe that Crews carried the .22 revolver out of Manus's car when he attempted to elude police. The facts in the affidavit allowed the reasonable inference that the .22 revolver belonged to Crews (because he carried it) or Manus (because it was in her car). If Crews or Manus kept a firearm in the car, it is reasonable to believe perhaps that they also kept evidence of possession of a firearm at Apartment 3, the registered address of the car and the residence where Crews was frequently seen shortly after police discovered the .22 revolver.

**[5]** The affidavit further showed that Crews and Manus were closely associated with each other at Apartment 3. Crews was arrested for attempting to elude the police mere

blocks from Apartment 3. That night, Crews had been driving Manus's Oldsmobile registered to that same address. During surveillance, Crews was seen driving away from Apartment 3's complex in a car parked in the space reserved for Apartment 3. He and Manus were observed together walking back and forth from Apartment 3 to a Pontiac parked in the space reserved for Apartment 3. These facts, combined with Officer McConnell's statements that his experience has shown him that further evidence of possession of firearms is often found at a suspect's residence, provide a sufficient link between Crews, Manus, firearms evidence, and Apartment 3 to find that there is a colorable argument for probable cause in this case. "[W]hile the affidavit supporting the . . . search warrant may not have been the model of thoroughness, it cannot be said that the document 'd[id] not link this location to the defendant.' " *United States v. Ramos*, 923 F.2d 1346, 1354 (9th Cir. 1991) (quoting *United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988). Therefore, we find that the officers were objectively reasonable in their reliance on the warrant and affidavit in executing their search of Apartment 3 for evidence of possession of firearms.

The district courts also found that the officers were objectively unreasonable in searching Apartment 3 for evidence of the crime of "attempting to elude police" because they had already obtained sufficient evidence to convict Crews of that crime. We need not delve into whether the officers reasonably believed they would discover additional evidence of attempting to elude police because we have already found that the affidavit did contain indicia of probable cause to search Apartment 3 for evidence of felon in possession of a firearm. Therefore, the officers' reliance on the warrant was not objectively unreasonable for lack of indicia of probable cause.

II.   *The Affidavit Was Not Misleading as to Material Facts
      and Omissions*

The district court in Crews's case found that the good faith reliance exception was not available as to the crime of felon in possession because the affidavit contained superfluous information that was misleading to the state judge.[5] Defendants and the district court cited *United States v. Sartin* for the proposition that including a "forest of irrelevant and sometimes misleading information" precludes good faith. *See United States v. Sartin*, 262 F. Supp. 2d 1154, 1160 (D. Or. 2003). In *Sartin*, the search warrants were procured by (i) a misrepresentation "which police knew was almost certainly not true;" (ii) a misrepresentation that the suspect's brother had not reported his change of address, when he had; and (iii) a pretext whereby police stated that the search was for proof of violating sex offender registration laws, when they really only wanted to search for drugs. 262 F. Supp. 2d at 1160. Such clear indicia of bad faith are not present in this case.

**[6]** First, Defendants argue that Officer McConnell misled the state judge by claiming there was probable cause for the searches. There is no indication that the state judge wholly abandoned her judicial role and simply adopted Officer McConnell's opinions and beliefs or authorized the search in a "rubber stamp" manner. This contention is without merit.

**[7]** Next, Defendants argue that Officer McConnell made material omissions by stating that his experience has shown that felons often flee because of possession of a firearm, but did not mention that felons may also flee because of an outstanding warrant. This contention is also without merit as

---

[5]In *United States v. Leon*, the Court acknowledged that the good faith reliance exception would not be available where the affiant officer misled the magistrate by including information in the affidavit that the officer knows is false or would know is false but for his reckless disregard of the truth. 468 U.S. 897, 923 (1984).

Officer McConnell candidly acknowledged in the affidavit that Crews said he fled because of the arrest warrant. Officer McConnell reasonably included possession of a firearm as another driving force for why felons flee, as his experience has shown.

**[8]** Defendants further argue that the affidavit was misleading because it omitted the fact that no officer actually saw Crews enter or exit Apartment 3 and omitted the number of apartments that were in the same complex as Apartment 3. The affidavit makes several references to seeing Crews by "the area of" Apartment 3, and stated that Crews had been in a car parked in the space reserved for Apartment 3 on two separate occasions. Although "the area of" Apartment 3 does not necessarily mean Crews actually entered or exited Apartment 3 rather than another apartment within the complex, the reasonable inference can be made that it was in fact Apartment 3, considering Crews's undisputed connection to the Oldsmobile registered to Apartment 3, Crews's use of the parking space reserved for Apartment 3, and Crews's documented presence at the complex with Manus, the undisputed tenant of Apartment 3. Therefore, Defendants' contention is without merit.

**[9]** Defendants also argue that the affidavit was misleading as it suggested that Apartment 3 was Crews's residence, while Officer McConnell was aware that Crews had a different address listed as his residence on his driver's license and in the Portland Police Data System. This argument is also without merit. The affidavit included the fact that Crews's license and the Data System stated a different address for Crews's residence. The state judge had all the facts before her and reasonably concluded that Apartment 3 could possibly be an additional or new residence, or at least a reasonable location to search for evidence. *See Martinez v. Bynum*, 461 U.S. 321, 339 (1983) (recognizing that a person can have one domicile, but several residences).

**[10]** Defendants also argue that the affidavit contained superfluous information that misled the state judge. The affidavit requested authority to search for "magazines" which were not applicable to the .22 revolver discovered in the bushes. While magazines would not indicate possession of a .22 revolver, it does not seem materially misleading to include one inapplicable item amongst many other items that would specifically apply to possession of a .22 revolver such as ammunition, cleaning kits, holsters, shell casings, firearm cases, laser sights, trigger locks, a safe, and receipts. Additionally, Defendants argue that the inclusion of their felony records created the false impression of probable cause. We find that such information was not misleading, but was of particular relevance since the police officers were seeking evidence of the crime of "felon in possession of a firearm."

**[11]** Lastly, Defendants argue that including requests to search for paperwork to link the Oldsmobile to Crews, a search that would not yield any necessary evidence for a conviction of attempting to elude police, merely padded the affidavit and misled the state judge. In the absence of a pretext or other outright lies, merely requesting authority to seek additional—albeit unnecessary—evidence of a crime is not misleading. *See Sartin*, 262 F. Supp. 2d at 1158 (holding it was misleading to request a search for additional evidence of one crime as a pretext for searching evidence of another offense). Defendants' contentions are without merit.

III.  *Crews Knowingly and Voluntarily Waived his Miranda Rights*

Regarding Crews, the district court held that:

> because the police advised defendant that his detention that day was due to the warrant, and then interrogated defendant exclusively in conjunction with the improper execution of that warrant, defendant's waiver of his constitutional rights that day cannot be

construed fairly as sufficiently knowing and voluntary . . . Because that warrant was invalid and no good faith exception is applicable to excuse its execution, defendant's statements made during his detention and interrogation . . . are inadmissible.

*United States v. Crews*, No. 05-355-HA, 2006 U.S. Dist. LEXIS 47409, at *14-15 (D. Or. July 10, 2006). The Government argues that the district court suppressed Crews's statements solely as tainted fruit of an unlawful search, and not because of any *Miranda* defects. Crews argues that the district court suppressed his statements as tainted fruit and on the separate grounds that the record shows that, under the totality of the circumstances, he did not knowingly and voluntarily waive his *Miranda* rights. It seems that the district court concluded that the waiver was not knowing and voluntary solely because police "interrogated [him] exclusively in conjunction with the improper execution of [the] warrant" as the opinion makes no mention of any typical *Miranda* defects. However, having found that the search was objectively reasonable, we will address whether Crews's waiver was sufficiently knowing and voluntary.

**[12]** There is a presumption against waiver, of which the Government bears the burden of overcoming by a preponderance of the evidence. *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998). To meet this burden, generally, the Government must prove that, under the totality of the circumstances, the defendant was aware of the nature of the right being abandoned and the consequences of such abandonment. *Id.* Several factors to consider are (i) the defendant's mental capacity; (ii) whether the defendant signed a written waiver; (iii) whether the defendant was advised in his native tongue or had a translator; (iv) whether the defendant appeared to understand his rights; (v) whether the defendant's rights were individually and repeatedly explained to him; and (vi) whether the defendant had prior experience with the criminal justice system. *Id.* at 537-39.

**[13]** Although there was no written waiver, the totality of the circumstances show that Crews did, in fact, knowingly and voluntarily waive his rights. There is nothing in the record to suggest that Crews was of any diminished mental capacity that prevented him from understanding the nature of his rights or the consequences of abandoning them. Upon detaining Crews, Officer McConnell read him his *Miranda* rights in English, a language Crews fluently spoke and understood without the need of a translator. Crews stated that he understood his rights.[6] Officer McConnell read Crews his rights individually as Crews was the sole detainee present. Later at the precinct, Officer McConnell again reminded, and Crews acknowledged, that his constitutional rights still applied. Therefore, under the totality of the circumstances, Crews's waiver of his constitutional *Miranda* rights was sufficiently knowing and voluntary.

IV.  *The Information in the Affidavit Was Not Stale by the Time the Warrant Was Executed*

**[14]** Finally, Manus argues that the information regarding Crews's alleged possession of the .22 revolver on July 2, 2005 was rendered "stale" by the time police executed the search warrant on July 14, 2005. "Staleness must be evaluated in light of the particular facts of the case and the nature of the criminal activity and property sought." *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991). The total elapsed time from the foot chase until the execution of the search warrant at Apartment 3 was only twelve days. Neither the Government or Manus cites a case where staleness was found in such a short period of time. Moreover, it is reasonable to believe that ammunition, cleaning kits, cases, and other evi-

---

[6]The record shows that upon being read his *Miranda* rights, Crews first nodded, then said he did not understand, but then said he did. In fact, Crews told Officer McConnell that it was not his rights that he did not understand, but rather what was happening. At that point, Officer McConnell explained the search warrant to Crews.

dence of firearm possession would have still been present at Apartment 3 after only twelve days even if the .22 revolver was discarded. "One may infer that equipment acquired to accomplish a crime will be kept for some period of time." *United States v. Hernandez*, 80 F.3d 1253, 1259 (9th Cir. 1991), *overruled on other grounds Muscarello v. United States*, 524 U.S. 125 (1998). Therefore, Manus's staleness claim is without merit.

## *CONCLUSION*

While this case is not a model of flawless procedure, it does demonstrate objective reasonableness. The amount of work that went into the police investigation, surveillance, and execution of the search warrant further demonstrates the good faith efforts of the police officers in this case. Pursuant to *United States v. Leon*, 468 U.S. 897 (1984), it is abundantly clear that the police officers were deserving of the good faith reliance exception to the exclusionary rule. We therefore REVERSE the suppression orders as to both Crews and Manus and REMAND to the district courts for further proceedings.