**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 24 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-10298 |
| Plaintiff-Appellant, | D.C. No. 5:13-cr-00726-EJD-1 |
| v. | |
| RAMIRO ALCAZAR-BARAJAS, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted December 18, 2018
San Francisco, California

Before: CALLAHAN, N.R. SMITH, and MURGUIA, Circuit Judges.

The government appeals the district court's suppression of a firearm and of

statements made by defendant Ramiro Alcazar-Barajas. That evidence was

obtained during the search of Alcazar-Barajas' mobile home, which was located on

a roughly 20-acre property in Bradley, California.

We have jurisdiction under 18 U.S.C. § 3731, and we affirm.

---

*     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

The Court reviews de novo the district court's determination on a motion to suppress. *United States v. Lundin*, 817 F.3d 1151, 1157 (9th Cir. 2016). Factual findings are reviewed for clear error. *United States v. Ruckes*, 586 F.3d 713, 716 (9th Cir. 2009).

1. The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980) (internal quotation mark omitted) (quoting *United States v. U.S. Dist. Court*, 407 U.S. 297, 313 (1972)). Thus, police entry into an area protected by an individual's "reasonable expectation of privacy" (whether a house, apartment, hotel room, or mobile home) constitutes a search, which, absent some exception, requires a warrant. *See Katz v. United States*, 389 U.S. 347, 360–61 (1967) (Harlan, J., concurring). Although we must interpret warrants with some flexibility, "when law enforcement wishes to search two houses or two apartments, it must establish probable cause as to each." *United States v. Cannon*, 264 F.3d 875, 879 (9th Cir. 2001); *cf. United States v. Whitney*, 633 F.2d 902, 907 (9th Cir. 1980).

The government first argues that it is "clear" the mobile home described in the warrant was the mobile home in which Alcazar-Barajas was found.

It is far from clear. The warrant authorized the search of a "gray mobile home type structure," among other buildings on the property. But the mobile home where Alcazar-Barajas was found was white. And, perhaps more significantly,

there were in fact *two* mobile homes on the property in (relative) close proximity to one another. Nothing in the warrant or the warrant affidavit provides any reasonable method of discerning *which* of the two mobile homes was the one the magistrate authorized to be searched.

The warrant was thus ambiguous, at best.[1] To the extent officers know "or even if they should have known" of ambiguity in the warrant and the risk of searching a residence outside the warrant's scope, officers are "required to discontinue the search" as soon as they are "put on notice" of that risk. *Maryland v. Garrison*, 480 U.S. 79, 85–87 (1987). Here, the government was aware, in advance of the search, that there were two mobile homes on the property. In fact, the government's own "operational plan" for executing the warrant describes the two mobile homes indistinguishably as "two gray/white mobile home type structures."

The district court concluded that, based on the "totality of all [the] circumstances," the officers involved in executing the search "should have known" that Alcazar-Barajas' mobile home was a "different living situation" requiring

---

[1]     The government relies on *United States v. Alexander*, 761 F.2d 1294 (9th Cir. 1985), and *United States v. Williams*, 687 F.2d 290 (9th Cir. 1982). The warrant in *Alexander*, which authorized the search of "all buildings" on the ranch, was broader than the one here. 761 F.2d at 1300. Further, and unlike *Alexander*, nothing in the warrant or the warrant affidavit establish that the ranch in this case was under "common control" of either the fugitive or his family. *See id.* at 1301. And in *Williams*, the affidavit described each of the buildings to be searched with particularity. 687 F.2d at 292. Not so here. *One* mobile home was described; the other was not.

officers to "secur[e] a new warrant." There is nothing clearly erroneous about that determination. *See Ruckes*, 586 F.3d at 716.

The search of Alcazar-Barajas' mobile home was therefore not authorized by the warrant and presumptively unreasonable under the Fourth Amendment. *See Whitney*, 633 F.2d at 907.

2.      Because we conclude that the search of Alcazar-Barajas' mobile home was not authorized by the warrant, it similarly follows that officers' preliminary "seizure" of Alcazar-Barajas and his mobile home was unauthorized by the warrant. That is, Alcazar-Barajas was warrantlessly "seized" within the meaning of the Fourth Amendment when officers surrounded his mobile home, with weapons drawn, and ordered him to exit the home. *See Lundin*, 817 F.3d at 1155; *United States v. Al-Azzawy*, 784 F.2d 890, 893 (9th Cir. 1985). All evidence obtained by law enforcement – the firearm and statements about Alcazar-Barajas' immigration status – flowed from this "primary illegality" and is therefore the "fruit of the poisonous tree" and subject to exclusion. *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963). We need not reach any of the government's arguments concerning exceptions to the warrant requirement, because none account for this initial warrantless seizure.

3.      Finally, the government argues that *Leon*'s "good faith" exception should apply. *United States v. Leon*, 468 U.S. 897, 922 (1984). The Court reviews

whether officers acted in good faith reliance on a search warrant de novo. *United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007). Findings of fact are reviewed for clear error. *See id*.

The good faith "inquiry is one of objective reasonableness; we must decide whether a reasonably well-trained officer would have known that this particular search was illegal despite the magistrate judge's authorization." *United States v. Clark*, 31 F.3d 831, 835 (9th Cir. 1994); *Herring v. United States*, 555 U.S. 135, 145 (2009) (application of good faith turns on whether an officer would know a search was illegal based on "all of the circumstances") (internal quotation marks omitted) (quoting *Leon*, 468 U.S. at 922, n.23).

The district court emphasized that, based on the "totality of the circumstances," officers "should have known" that additional authorization was required prior to searching both mobile homes.[2] That conclusion is not clearly erroneous. *See Crews*, 502 F.3d at 1135. Guided by that factual determination, we conclude the good faith exception does not apply here. *See Clark*, 31 F.3d at 835.

**AFFIRMED**.

---

[2]    The government presented its argument on good faith to the district court. Although the district court did not explicitly rule on the application of the exception, our conclusion on good faith flows directly from the district court's findings.

5

*United States v. Alcazar-Barajas*, No. 17-10298

CALLAHAN, Circuit Judge, dissenting:

I would reverse the district court's grant of the motion to suppress because the evidence was admissible for three separate and compelling reasons. First, the warrant authorized a search of the entire ranch property—not just certain structures on the property. Second, even if the warrant were to be construed as not authorizing the search of the mobile home, the officers were authorized to be at the ranch, to order Alcazar-Barajas to exit the structure, to temporarily detain him for investigatory purposes and officer safety, and to enter the structure to secure the child and gun. Third, even if neither the warrant nor an exception to the warrant requirement were to support admissibility of the evidence, the evidence was still admissible pursuant to the good faith exception to the exclusionary rule. Accordingly, I dissent.

1. The warrant unambiguously authorizes the search of "69481 Jolon Rd. Bradley, California 93426" for (and seizure of) "Moises Medina-Barajas." The place to be searched is defined by its address, rather than by its constituents. *See United States v. Williams*, 687 F.2d 290, 293 (9th Cir. 1982) (citation omitted) (explaining "the word premises was used in the warrant to include and to authorize a search of buildings standing upon the land, since many of the items sought . . . would in all likelihood be found only within the confines of a building") (alteration

1

in original) (citation omitted).  Here, the description of the premises in the warrant as "a large ranch" further indicates that the officers were authorized to search the entire property.

The majority misconstrues the warrant as authorizing the search of *specific structures* only.  But, the specific structures listed in the warrant are *identifying* characteristics of the entire property, as reflected in a "bird's eye view" snapshot of the premises available from the internet.  The warrant's use of the phrase "consisting of" further signals that the structures that follow are descriptors of the entire ranch.  The majority's contrary view is an overly narrow reading of the warrant and is contrary to the warrant's definition of the "premises" by its address. *See Williams*, 687 F.2d at 293 ("It is clear that the Magistrate [Judge] issuing the warrant intended to use the word premises in the warrant to include and authorize a search of the buildings on the mining claims.").

Moreover, the majority incorrectly posits that the officers knew or should have known of the ambiguity in the warrant and that the mobile home that Alcazar-Barajas was found in was outside the scope of the warrant and, thus, should have secured a new warrant.  Not only did the warrant unambiguously authorize the search of the entire property, but also there was no change in circumstance, error, or ambiguity revealed while the officers executed the warrant. *See Maryland v. Garrison*, 480 U.S. 79, 85–87 (1987) ("If the officers had known, or should have

2

known, that the" place being searched actually contained "two separate dwelling units," thus becoming "aware of [an] error in the warrant, they would have been obligated to limit their search to" the place covered by the search warrant, and they would have been "required to discontinue the search . . . ."). Here, when the warrant issued, the affidavit recognized the possibility of multiple persons or living quarters on the property, but nevertheless authorized the search of the entire property.[1] Accordingly, it is not critical that the warrant mentioned one "mobile home type structure" and in fact there were two mobile home type structures, or that one mobile home turned out to be white instead of gray. Nothing happened during the execution of the search warrant that might have alerted the officers that they might be outside the authorized terms of the warrant; they were still at "69481 Jolon Rd. Bradley, California 93426" searching for the fugitive.

2. Even if the warrant were to be construed as not authorizing the search of the mobile home in which Alcazar-Barajas was found, the officers' actions remained lawful. The majority finds Alcazar-Barajas was improperly seized within the meaning of the Fourth Amendment, when officers surrounded the mobile home, with weapons drawn, and ordered him to exit the mobile home. I disagree. The officers acted lawfully. The warrant validly authorized law

---

[1] The affidavit supporting the warrant lists several persons associated with the address, including one person living in "Unit B" at the address.

enforcement to be on the property and to search for the fugitive on the property. Ordering an occupant of the mobile structure to exit the structure was legally within the scope of searching for the fugitive. It "would be absurd to suggest" that the warrant's purpose of searching for a fugitive on the property "could be frustrated by simply concealing" the fugitive within one of the structures at the very address defined as the premises to be searched in the warrant. *Williams*, 687 F.2d at 293. Prohibiting officers from ascertaining whether the fugitive was in the mobile home would frustrate the essence of the search warrant and might well endanger the officers' safety. This was a search for a fugitive convicted of offenses related to drug trafficking and on a premises that may have previously been involved in the operations of a methamphetamine laboratory.

Thus, when Alcazar-Barajas exited the mobile home, the officers were authorized to temporarily detain him for investigative purposes and for officer safety. The police were entitled to ascertain who he was, whether anybody else was inside the mobile home, and whether any weapons were inside. *See Terry v. Ohio*, 392 U.S. 1, 22 (1968). This brief questioning comports with the purpose of the warrant and is at the heart of the "public safety" exception to warrantless searches, which applies even if the officers "had no reason to believe that [Alcazar-Barajas] was armed and dangerous[.]" *United States v. DeSantis*, 870 F.2d 536, 539 (9th Cir. 1989).

4

Furthermore, the officers were lawfully authorized to enter the mobile home. The presence of a gun, an unattended child, and an unaccounted-for fugitive fairly invoked the exigent circumstances exception to the warrant requirement. *See United States v. Gooch*, 6 F.3d 673, 680 (9th Cir. 1993) (authorizing the search "where unsupervised children would be left inside the house with [a] weapon or explosives if the officer did not secure it") (citations omitted). Accordingly, Alcazar-Barajas' gun and statements regarding his illegal citizenship status were lawfully obtained by the law enforcement officers.

3. Finally, even if the above arguments are not persuasive, the "good faith" exception to the exclusionary rule applies. "'[A] warrant issued by a magistrate . . . suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search'" when the "evidence [was] obtained in objectively reasonable reliance on a subsequently invalidated search warrant[.]" *United States v. Leon*, 468 U.S. 897, 922 (1984) (citation omitted).

The majority adopts the district court's determination that the good faith exception is inapplicable because the officers should have known that additional authorization was required prior to searching both mobile homes. I disagree. The executing officers' reliance on the warrant was objectively reasonable because an officer could reasonably read the warrant to authorize a search of the entire property: "69481 Jolon Rd. Bradley, California 93426." Because the warrant

5

described the premises to be searched as a "large ranch," an officer could reasonably read this to mean the entire property at this address. An officer could reasonably understand the listed structures in the warrant to be examples of identifying characteristics to distinguish this large ranch from another premise. I would hold that the officers' search of the mobile home in which Alcazar-Barajas was found, was objectively reasonable.

In sum, I dissent because the officers' search of the mobile home type structure was authorized by the warrant and was lawful under exceptions to the warrant requirement. Moreover, the evidence was admissible under the good faith exception to the exclusionary rule. I would reverse the district court's grant of the motion to suppress and remand for further proceedings.