**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Terrence Wayne CLARK,**
**Defendant–Appellant.**

No. 93–30093.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 1993.

Decided July 29, 1994.

Mark R. Davis, Anchorage, AK, for defendant-appellant.

Stephan A. Collins, Asst. U.S. Atty., Anchorage, AK, for plaintiff-appellee.

Before: GOODWIN, CANBY, and KOZINSKI, Circuit Judges.

CANBY, Circuit Judge:

During a search of Terrence Wayne Clark's home, law enforcement agents discovered several firearms and numerous marijuana plants. After the district court denied his motions to suppress evidence, Clark pleaded guilty to two marijuana-related offenses. The written plea agreement preserved his right to appeal the district court's denial of the suppression motions.

■ Clark argues that the district court erred in finding that probable cause supported the issuance of the search warrant. Clark contends also that the search warrant was overbroad and, thus, failed to provide the executing officers the necessary guidance to execute a constitutional search. Finally, Clark alleges that participation by Alaska National Guard troops in executing the warrant was unlawful. Because we agree that the search warrant was overbroad, we remand to the district court to suppress those items seized pursuant to the invalid portion of the warrant. With regard to the remaining items, we conclude that the district court did not err in denying suppression.

## Background and Procedural History

On May 22, 1992, DEA agent Robert Cayford sought a warrant to search Clark's residence in Alaska. His affidavit stated that an anonymous source had mailed two letters to law enforcement officials alleging that Clark formerly lived in Missouri, where he was closely acquainted with John Yarbro, a Missouri fugitive wanted for marijuana offenses and believed to be living in Alaska.[1] Cayford corroborated the statements of the anonymous source only to the extent of discovering that Clark had surrendered a Missouri driver's license and obtained an Alaska license. Aside from the inference to be drawn from the alleged relationship between Clark and Yarbro, the anonymous tip contained no information regarding a marijuana cultivation operation or any other illegal drug activity.

The anonymous tip was not, however, the sole alleged basis for probable cause. Cayford's affidavit in support of the application also contained numerous general assertions about the characteristics of marijuana cultivators. Of primary relevance was the assertion that marijuana cultivators often have high electricity usage because of the need to provide light to growing plants. The affidavit then set out Clark's electrical consumption, carefully reporting Clark's electrical usage in kilowatt-hours for each month of the previous fourteen-month period. Although varying considerably from month to month, Clark's bills ranged upward to almost $400 and did not decline during the summer months when normal residential usage falls. The affidavit reported that Clark's property contained alternative heat sources, such as propane and fuel oil tanks, implying that electricity was being used for some purpose other than household heating.

---

1. Paragraph 22 of the Cayford affidavit states in full:

> The St. Louis, Missouri, Division of the Federal Bureau of Investigation (FBI) received two letters from the same anonymous source identifying himself/herself with a code name. The source stated that Yarbro [the Missouri fugitive] is an associate of Terry Clark. According to this anonymous source, Clark is a pilot and owner of a private airplane. Clark relocated from Dixon, Missouri, to Alaska. The anonymous source further stated that Yarbro's pickup truck was seen "many times" at Clark's residence in Dixon, Missouri, prior to Yarbro leaving the Dixon, Missouri, area. He/she stated that Clark may have flown Yarbro to Alaska in his private plane. The anonymous source added, "Maybe if you find Terry Clark in Alaska, you would there also find Yarbro."

On the basis of the allegations in the affidavit, a federal magistrate judge issued a search warrant for Clark's residence, authorizing law enforcement agents to seize "narcotic controlled substances, drug paraphernalia, marijuana cultivation equipment, instructions, notes, cultivation magazines, currency, documents, and records and fruits and instrumentalities of [a] violation of Title 21, U.S.C. § 841(a)(1)." The Cayford affidavit was neither attached nor incorporated into the warrant.

Agent Cayford was not present when law enforcement agents executed the warrant. The search team included Anchorage police officers, Alaska State Troopers, a DEA agent, and four members of the Alaska National Guard. The team leader, an Alaska State Trooper, directed the National Guard troops to secure the perimeter of the property and to provide cover at the front and the rear entrances of the home. When the home was secure, the National Guard troops assisted police officers in assembling and documenting evidence found during the search. The team seized numerous marijuana plants that were growing in the basement, several rifles and handguns, radio equipment, notes and other documents, a wallet and a cellular telephone.

Clark moved the district court to suppress the evidence found during the search. His first motion challenged the sufficiency of the warrant, alleging that the warrant was not supported by probable cause because the anonymous tip was stale and uncorroborated. He also alleged that the warrant was overbroad. A magistrate judge agreed with the latter argument and recommended suppression of the evidence obtained under the overbroad portion of the warrant. The district court, however, rejected the recommendation and denied Clark's motion.

Clark filed a second suppression motion, arguing that the use of the National Guard troops in executing the search was not authorized by law. The district court denied this motion also. Clark has appealed the denials of each of the two suppression motions.

*Analysis*

■ We review *de novo* each of the district court's decisions to deny Clark's motions to suppress. *See United States v. Ramos,* 923 F.2d 1346, 1350 (9th Cir.1991).

## I. Probable Cause

■ A magistrate judge's finding of probable cause is entitled to great deference and this court will not find a search warrant invalid if the magistrate judge had a "substantial basis" for concluding that the supporting affidavit established probable cause. *Id.* at 1351. A magistrate judge may issue a search warrant if, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular location. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

The Cayford affidavit offers two possible bases for a finding of probable cause: first, the anonymous tip concerning Clark's previous relationship with Yarbro, a fugitive who was wanted on marijuana-related charges in Missouri and, second, Clark's allegedly high consumption of electricity.

### A. The anonymous tip

■ Because hearsay from an unknown informant is highly suspect, officers must provide some basis to believe that the tip is true. Although hearsay may be used to establish probable cause in some circumstances, an anonymous tip is insufficient to establish probable cause absent independent corroboration through police investigation or some other indication of reliability. *Id.* at 241–45, 103 S.Ct. at 2333–36. In *United States v. Laurins,* 857 F.2d 529, 540 (9th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989), we ruled that an anonymous informant's statements were corroborated and "therefore could be considered" together with other evidence in issuing a search warrant. The negative implication of *Laurins* is that an anonymous tip is entitled to little or no weight in a probable cause evaluation if it is entirely uncorroborated and lacks any indication of reliability. Mere confirmation of innocent static details in an anonymous tip does not constitute cor-

roboration. *United States v. Mendonsa,* 989 F.2d 366, 369 (9th Cir.1993). Consequently, in *Mendonsa,* we ruled that the verification of a suspect's address in an anonymous statement is insufficient corroboration. *Id.*

■ The anonymous tip in the Cayford affidavit contains no information regarding marijuana cultivation, the activity for which Clark was indicted. It suggests only that Clark and Yarbro knew each other and speculates that they moved together to Alaska. For purposes of establishing probable cause, the tip alone is deficient. Moreover, the Cayford affidavit is devoid of any indication that the anonymous tip is reliable. It fails to divulge the basis for the tipster's knowledge or what steps law enforcement agents took to corroborate the information. Although Cayford determined that Clark had surrendered a Missouri driver's license for an Alaska license, this information is insufficient, under *Mendonsa,* to corroborate the tip. Because the affidavit fails to establish any basis for concluding that the tip is reliable, this hearsay should have been given little or no consideration by the magistrate judge in evaluating probable cause.

### B. Electrical consumption

■ According to the affidavit, marijuana cultivators often consume excessive quantities of electricity because of the need to provide light and heat to growing plants. The affidavit detailed Clark's monthly electrical consumption and asserted that it was unusually high. It is barren, however, of any information about the average residential electric consumption of homes in rural Alaska or other homes in the vicinity. In short, it provides no basis for a magistrate judge or this court to evaluate whether the usage was high.

Even assuming, however, that Clark's electrical consumption was "high," such consumption is consistent with numerous entirely legal activities. This evidence, which is equally consistent with both legal or illegal activity, coupled with an entirely uncorroborated anonymous tip, is simply not sufficient to establish probable cause for searching a home. We conclude that the affidavit was insufficient to support the magistrate judge's finding of probable cause. We next must decide whether Clark is entitled to suppression of the evidence obtained under the warrant.

### C. Suppression

■ We have refused to suppress evidence obtained under an invalid warrant if the officers obtaining the warrant and performing the search relied in good faith on the warrant's validity. *United States v. Mendonsa,* 989 F.2d 366, 369 (9th Cir.1993). Although we state the rule in terms of "good faith," the Supreme Court has "eschew[ed] inquiries into the subjective beliefs of law enforcement officers." *United States v. Leon,* 468 U.S. 897, 922 n. 23, 104 S.Ct. 3405, 3420 n. 23, 82 L.Ed.2d 677 (1984). Consequently, the inquiry is one of objective reasonableness; we must decide whether a reasonably well-trained officer would have known that this particular search was illegal despite the magistrate judge's authorization. *Id., citing Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1981). The objective reasonableness is to be determined not only with respect to the officers who executed the warrant, but also to the officer who provided the affidavit upon which the warrant was based. *Leon,* 468 U.S. at 923, n. 24, 104 S.Ct. at 3420, n. 24.

■ Although we are satisfied that the affidavit was insufficient to establish probable cause, and the question of objective reasonableness in relying on the warrant is a close one, we cannot say that the affidavit was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Id.* at 923, 104 S.Ct. at 3421 (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975)). The electricity usage was insufficient to establish probable cause, but it was not irrelevant to that determination; the affidavit asserted that usage was high and that marijuana growers used large amounts of electricity. The affidavit also negated one innocent use—heating—by noting the alternative sources of heat at the residence. There was enough information so that objectively reasonable officers were entitled to rely on the magistrate judge's deter-

mination. None of the grounds that would disqualify the officers from that entitlement are present. Except for its overbreadth, which we discuss below, the warrant was not facially deficient; the officers did not mislead the magistrate judge or display a disregard for truth in the supporting affidavit; nor did the magistrate judge abandon his judicial role. *See Leon,* 468 U.S. at 922–23, 104 S.Ct. at 3420–21; *see also United States v. Brown,* 951 F.2d 999, 1004 (9th Cir.1991). Consequently, although we conclude that there was no probable cause to search Clark's home, we refuse to require that the evidence be suppressed, because the officers' reliance on the search warrant was objectively reasonable.

## II. Overbreadth of the Search Warrant

Clark also alleges that the search warrant was overbroad. A magistrate judge agreed, but the district court rejected the magistrate judge's recommendation to suppress evidence obtained under the overbroad portion of the warrant.

 A search warrant must allege with reasonable particularity the types of items that may be seized. *United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir.1986). Otherwise, it cannot provide meaningful guidance to the officer charged with its execution. We have invalidated a warrant authorizing the seizure of "corporate books and records, including but not limited to cancelled and duplicate checks, check stubs, journals, ledgers, weekly summaries, driver trip envelopes, and daily schedules, of [certain corporations], which are the fruits and instrumentalities, of violations of Title 26, U.S.C. § 7201." *United States v. Cardwell,* 680 F.2d 75, 77 (9th Cir.1982). In *Cardwell,* the court ruled that the search warrant was not sufficiently particular because it contained no guidelines to aid officers in determining what may or may not constitute evidence of a violation of the statute. *Id.* at 77–78. For similar reasons, in *United States v. Crozier,* 777 F.2d 1376, 1381 (9th Cir.1985), we held overbroad a warrant that authorized seizure of "evidence of a violation [of] 21 U.S.C. §§ 841, 846."

The warrant in this case authorized a search for: "narcotic controlled substances, drug paraphernalia, marijuana cultivation equipment, instructions, notes, cultivation magazines, currency, documents, and records and *fruits and instrumentalities of [a] violation of Title 21, U.S.C. § 841(a)(1)."* (Emphasis added.) We agree with the magistrate judge that the emphasized phrase rendered the warrant facially overbroad. The warrant provides no guidance to the executing officers concerning the items to be sought or seized; anything, or any nature or description, deemed to be a fruit or instrumentality of the alleged crime would qualify. Nor was the general phrase of the warrant limited by a description in an attached affidavit. *See United States v. Luk,* 859 F.2d 667, 676 (9th Cir.1988) (warrant's overbreadth can be cured by accompanying affidavit that more particularly describes items to be seized).

It was apparent on the face of the warrant that the catchall phrase authorizing seizure of "fruits and instrumentalities of [a] violation of" 21 U.S.C. § 841(a)(1) did not adequately describe the items to be seized. *See Brown,* 951 F.2d at 1004 & n. 1. In light of that facial deficiency, the executing officers could not reasonably rely on it, under the objective test of *Leon. See Leon,* 468 U.S. at 923, 104 S.Ct. at 3421 ("a warrant may be so facially deficient—*i.e.,* in failing to particularize ... the things to be seized—that the executing officers cannot reasonably presume it to be valid"); *United States v. Crozier,* 777 F.2d at 1381 (agent cannot reasonably rely on warrant authorizing seizure of "evidence of violation" of 21 U.S.C. 841 and 846).

 The remedy for an overbroad search warrant is suppression of the seized evidence. The court need suppress, however, only those items seized pursuant to the invalid portion of a search warrant. *United States v. Gomez–Soto,* 723 F.2d 649, 654 (9th Cir.), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984). We remand to the district court the limited question of what evidence was obtained under the overbroad portion of the warrant and direct the suppression of that evidence.

## III. The Use of the National Guard During the Search

 Clark next argues that the use of National Guard troops in executing the

search warrant was unlawful under Alaska law, and accordingly, requires suppression of the evidence obtained during the search.

In *United States v. Roberts,* 779 F.2d 565, 567 (9th Cir.), *cert. denied,* 479 U.S. 839, 107 S.Ct. 142, 93 L.Ed.2d 84 (1986), the defendant sought to suppress evidence obtained during a search in which the U.S. Navy was involved. Though we implicitly recognized that the Navy's involvement was unlawful, we refused to suppress the evidence obtained during the search because there was no evidence of widespread or repeated violations. *Id.* at 568. We said that we would not apply the exclusionary rule in such circumstances unless we see a need to deter future violations of the law.

Clark agrees that the National Guard troops in this case were not "federalized" and, consequently, that the issue is whether state law authorized their use. The question is a prickly one and we need not decide it. Assuming, without deciding, that the use of the Guard members was unlawful, we decline to suppress the evidence obtained in the search of Clark's home. The guard members were relegated to a minor supporting role and there is little evidence in this record that the allegedly unlawful use of National Guard troops in civilian law enforcement is widespread in Alaska. The district court did not err in denying Clark's motion to suppress on the basis of the unlawful use of the National Guard.

### Conclusion

We REVERSE in part, AFFIRM in part, and REMAND to the district court to determine what evidence was obtained under the overbroad portion of the search warrant and must be suppressed.