106 F.3d 410
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fred LIVINGSTON, Defendant-Appellant.
 No. 96-30151.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 8, 1997.
Decided Jan. 22, 1997.
 
 Before: WRIGHT, CANBY and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Fred Livingston challenges the district court's denial of his motion to suppress a pen gun found in his car. He asserts that the warrant that led to the pen gun was tainted by unlawfully acquired evidence and material omissions, and that the warrant was not supported by probable cause. He also asserts that the search went beyond the scope of the warrant. We affirm.
 
 I. Background
 
 3
 While travelling on U.S. Highway 87 in Montana, Livingston passed another vehicle in a designated no-passing zone. He was stopped and arrested by Officer Kelly Mantooth, who discovered that Livingston's vehicle was unregistered and his driving privileges had been suspended. Montooth told Livingston that he would be taken to the local jail and agreed to let him secure his car. When Livingston furtively removed a tin from the passenger compartment, Mantooth became suspicious and asked Livingston to open the tin. After several requests, Livingston finally gave in, opening the tin to reveal a small rubber-handled razor. Mantooth then took Livingston to the local jail.
 
 
 4
 An inventory search of Livingston's possessions uncovered seven small plastic baggies in his wallet. Review of his criminal history revealed that Livingston had twice been charged with drug-related crimes in the past. Mantooth then drafted a search warrant to search Livingston's car, had it approved by the local county attorney, and had it authorized by the justice of the peace. In the course of the subsequent search, Mantooth found something that looked like a chalk marker but which turned out to be a pen gun.
 
 
 5
 Charged with possession of an unregistered firearm, 26 U.S.C. § 5861(d), and transporting an unregistered firearm, 26 U.S.C. § 5861(j), Livingston entered a conditional plea of guilty and appealed from the district court's denial of his motion to suppress.
 
 II. The Warrant Was Not Tainted
 
 6
 Livingston argues that the pen gun should have been suppressed because the warrant that led to the pen gun was tainted. More specifically, he contends that Mantooth's warrant application relied upon unlawfully acquired evidence and made material omissions. We disagree with both contentions.
 
 
 7
 Livingston first argues that the warrant application relied upon unlawfully acquired evidence--namely the razor blade uncovered by the warrantless search at the scene of arrest. But, while it is true that warrantless searches are generally unlawful, Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973), and that unlawfully acquired evidence cannot be used to establish probable cause, United States v. Vasey, 834 F.2d 782, 788 (9th Cir.1987), Mantooth's warrantless search was lawful because it fell within the well-established exception for searches incident to arrest. United States v. Robinson, 414 U.S. 218, 224 (1973). A search is "incident to arrest" if it follows an arrest, is contemporaneous with arrest, and does not extend beyond the area under the arrestee's control. Vasey, 834 F.2d at 786-87. Here, Mantooth searched Livingston's tin at the time of arrest, while the tin was within Livingston's control. Indeed, Livingston concedes that the search was a search incident to arrest. As a result, no warrant was needed to search the tin, the razor was not discovered unlawfully, and the warrant was not tainted.[1]
 
 
 8
 Livingston next contends that Mantooth deliberately or recklessly omitted material information from his warrant application--namely, that there was no odor of drugs in Livingston's car; there was nothing suspicious in plain view in the car; there was no drug residue on any of his possessions; there were no drugs, weapons, or cash on him when he was arrested; and he did not appear to be involved with drugs. While it is true that deliberate or reckless omissions of information material to the determination of probable cause can render a warrant invalid, United States v. Meling, 47 F.3d 1546, 1553 (9th Cir.), cert. denied, 116 S.Ct. 130 (1995), the district court found that these omissions were neither reckless nor material. Reviewing its mens rea finding for clear error, and its materiality finding de novo, United States v. Hernandez, 80 F.3d 1253, 1260 (9th Cir.1996), we conclude that the district court was correct.
 
 
 9
 First, the district court did not clearly err in finding that these omissions were neither deliberate nor reckless. While courts have sometimes inferred recklessness or deliberateness from the omission of evidence that was obviously important, see e.g., Meling, 47 F.3d at 1554 (failure to disclose that key witness had been diagnosed with hallucinations), here the omitted facts were inconsequential and self-evident. Mantooth's failure to state whether Livingston's car had an odor of drugs, for example, likely alerted the magistrate that there was no such odor in the car. See United States v. Garcia-Cruz, 978 F.2d 537, 540-41 (9th Cir.1992) (omission not reckless where fact "readily can be gleaned from the affidavit").
 
 
 10
 Second, the evidence Mantooth omitted was not material. Omitted evidence is "material" if it would alter the outcome of the probable cause determination. Id. at 541. Here, the evidence omitted by Mantooth would not have altered the probable cause determination. For example, none of the omitted evidence directly contradicted the evidence in the warrant application. See, e.g., United States v. DeLeon, 979 F.2d 761, 764 (9th Cir.1992) (officer failed to note that witnesses' directly contradicted each other). Nor would inclusion of the omitted evidence have revealed that seemingly incriminating evidence was, in context, entirely innocent. See, e.g., United States v. Stanert, 762 F.2d 775, 781-82 (9th Cir.1985) (officer failed to mention that incriminating events at house occurred before suspect purchased it). Simply put, Mantooth was not required to list all the evidence he might have found but didn't.
 
 III. The Good Faith Exception Applies
 
 11
 Livingston argues strenuously that the search warrant that led to the pen gun was not supported by probable cause and that the pen gun was therefore inadmissible. The government contends that the warrant was supported by probable cause, and that, even if it was not, the pen gun is admissible under the inevitable discovery and good faith exceptions to the exclusionary rule. We need reach only the issue of good faith: because Mantooth relied on the search warrant in good faith, the pen gun was admissible.
 
 
 12
 Evidence need not be suppressed when it was discovered by an officer relying on a search warrant in good faith. United States v. Leon, 468 U.S. 897, 913 (1984). Good faith reliance must be objectively reasonable, and the warrant must have been issued by a detached and neutral magistrate. United States v. Clark, 31 F.3d 831, 835 (9th Cir.), cert. denied, 115 S.Ct. 920 (1995). Reliance is not in good faith if the warrant was facially deficient or "so lacking in the indicia of probable cause as to render belief in its existence entirely unreasonable." Id. (quoting United States v. Leon, 468 U.S. 897, 923 (1984), quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975)). Nor can there be good faith if the issuing magistrate wholly abandoned the judicial role or if the relying officer mislead the magistrate. Id.
 
 
 13
 Here, Mantooth's reliance was in good faith. He had no reason to believe that the justice of the peace was partial or that he had wholly abandoned the judicial role. Nor was the warrant facially inadequate--indeed, it had been approved by a local county attorney. United States v. Mendonsa, 989 F.2d 366, 369-70 (9th Cir.1993) (reasonable to rely on warrant approved by attorney); but see United States v. Kow, 58 F.3d 423, 429 (9th Cir.1995) (attorney's approval not always enough). Further, although the affidavit's showing may have been weak, the warrant was not "so lacking in indicia of probable cause" that Mantooth's reliance was unreasonable. Rather, the evidence relied upon--furtive behavior, a tin, a small razor, seven baggies, and a record of drug arrests--did suggest that Livingston was engaged in drug-related conduct and "was not irrelevant to [the probable cause] determination": it therefore could support reasonable reliance. Clark, 31 F.3d at 835. Finally, contrary to Livingston's contentions, Mantooth did not mislead the reviewing magistrate by omitting evidence. As stated above, the information Mantooth omitted from his warrant application was both inconsequential and self-evident. Such omissions have been found consistent with good faith. See, e.g., Mendonsa, 989 F.2d at 369 (affiant failed to mention he had seen no suspicious activity at searched house in a week-long pre-search surveillance). Thus, in sum, Mantooth relied on the warrant in good faith and the pen gun was properly admitted.
 
 
 14
 IV. The Pen Gun Was Not Outside the Scope of the Warrant.
 
 
 15
 Livingston's final argument is that the pen gun was beyond the scope of the search warrant (and therefore also beyond the scope of the good faith exception) and should therefore have been suppressed. This argument is plainly wrong.[2]
 
 
 16
 When a search exceeds the scope of the authorizing warrant the evidence discovered must be suppressed, United States v. Ewain, 88 F.3d 689, 693 (9th Cir.), cert. denied, 117 S.Ct. 332 (1996), but the search here did not exceed the scope of the warrant. The warrant authorized Mantooth to search for, inter alia, drug paraphernalia. As Mantooth testified, he initially believed the pen gun to be a pen, and investigated it because he believed that drug users sometimes use pens to "snort whatever they may be wanting to snort." Thus, his search was well within the scope of the warrant because he "looked in places where [he] could reasonably be expected to look for and find [narcotics] evidence." Id. at 694.
 
 
 17
 That the pen gun did not turn out to be drug paraphernalia does not change the result. Mantooth's lawful investigation of the pen gun brought its incriminating nature into plain view (Mantooth saw a bullet inside the "pen," instead of the expected drug residue). "Once the police are lawfully searching in a place for one thing, they may seize another that is in plain view, if its incriminating nature is immediately apparent." Id. at 693.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The government also argues that Livingston consented to the search. Because we find that the search of the tin was a valid search incident to arrest, we need not reach the issue of consent
 
 
 [2]
 Whether police exceeded the scope of a warrant is reviewed de novo. United States v. Ayers, 924 F.2d 1468, 1480 (9th Cir.1991)