NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0676n.06

Nos. 10-1788/10-1845

FILED

*Jun 25, 2012*

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA, )
                         )
      Plaintiff-Appellee, )
                         ) ON APPEAL FROM THE UNITED
v. ) STATES DISTRICT COURT FOR THE
                         ) WESTERN DISTRICT OF MICHIGAN
NATALIA HOANG and LIEM HOANG, )
                         ) OPINION
      Defendants-Appellants. )
                         )
_____ )

**Before: KETHLEDGE and STRANCH, Circuit Judges; GWIN, District Judge.**[*]

**JANE B. STRANCH, Circuit Judge.** Appellants Natalia and Liem Hoang each entered into a plea agreement. Natalia pled guilty to maintaining their residence at 6376 Glenstone Drive, S.E., Grand Rapids, MI 49546, for the purpose of manufacturing, distributing, or using marijuana (Count 5), *see* 21 U.S.C. §§ 856(a)(1), 856(b), and 18 U.S.C. § 2. Liem pled guilty to knowingly manufacturing 100 or more marijuana plants (Count 1), *see* 21 U.S.C. § 841(a)(1), (b)(1)(B)(vii) and 18 U.S.C. § 2. The charges arose from evidence uncovered during a search of the appellants' home at 6376 Glenstone. That search revealed, among other things, 142 marijuana plants in the basement along with growing lights and a watering system. The appellants sought to have this evidence suppressed, arguing that the affidavit in support of the search warrant did not provide the state-court

_____

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

judge who issued the warrant with probable cause to believe that contraband would be found at the Glenstone property. The district court denied their motion.

Natalia and Liem each appeal the denial of their suppression motion. Because we conclude that the affidavit provided a substantial basis for the state judge to find that there was probable cause to search the Hoangs' property, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On an unknown date, police received an anonymous tip that Liem was growing marijuana in his basement at the Glenstone property. In May 2009, after completing some further investigation, Detective Dan Alderink of the Kent County Sheriff's Department submitted an affidavit in support of a search warrant for that property. A state-court judge determined there was probable cause to believe that evidence of a marijuana-growing operation would be found in the home and issued a search warrant authorizing the police to search the home, the people inside it, and their cars for evidence of a marijuana-growing operation. The police then searched the Glenstone residence in accordance with the warrant and found 142 marijuana plants and other evidence that the Hoangs had been growing marijuana in their basement.

In July 2009, Liem and Natalia were indicted on three counts: knowingly manufacturing 100 or more marijuana plants (Count 1); conspiring to manufacture 100 or more marijuana plants (Count 2); and maintaining their home for the purpose of manufacturing, distributing, or using marijuana (Count 5). Liem was also indicted for being a felon in possession of ammunition (Count 4). Natalia filed a motion to suppress in September 2009, which Liem joined later that month. The district court denied their motion without a hearing in January 2010.

Following the denial of their motion to suppress, Natalia pled guilty to Count 5 and Liem pled guilty to Count 1. In June 2010, the district court sentenced Natalia to 2 years probation and imposed an $18,000 fine. Liem was principally sentenced to 36 months' imprisonment and assessed a $5,000 fine. Both Natalia and Liem timely appealed.

## II. ANALYSIS

The dispositive issue in this case is whether Alderink's affidavit provided a substantial basis for the state judge to find that there was probable cause to search the Glenstone property.

In reviewing a district court's decision on a motion to suppress evidence, this Court reviews factual findings under a clear-error standard and legal conclusions de novo. *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009). If the district court denied the motion to suppress, then this Court must "view the evidence in the light most favorable to the government." *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008) (internal quotation marks omitted). Reviewing courts give "great deference" to the issuing judge's probable-cause determination. *United States v. Leon*, 468 U.S. 897, 914 (1984); *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986). To determine whether an affidavit establishes probable cause, this Court examines only the affidavit; information that the officer knows but does not convey to the issuing judge is irrelevant. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010).

The Fourth Amendment specifies that a search warrant may be issued only on probable cause. Probable cause exists "when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Howard*, 621 F.3d 433, 453 (6th Cir. 2010) (internal quotation marks omitted).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (brackets, ellipsis, and internal quotation marks omitted).

An informant's *veracity* is judged by whether the affidavit provides "facts establishing either the general veracity of the informant or the specific reliability of his report in the particular case"; an informant's *basis of knowledge*, by whether the affidavit reveals "the particular means by which he came by the information given in his report." *Massachusetts v. Upton*, 466 U.S. 727, 730 (1984) (internal quotation marks omitted). Although both elements are "highly relevant in determining the value" of the informant's information, the elements are not "entirely separate and independent requirements" that must be satisfied to demonstrate probable cause. *Gates*, 462 U.S. at 230. Instead, they are useful elements to consider in deciding whether the totality of the circumstances presented to the magistrate furnishes a substantial basis for concluding that probable cause existed. *Id.* at 230-33, 236, 238-39.

An anonymous tip will seldom extensively detail the basis of the tipster's knowledge or reveal his or her veracity. *Id.* at 237. But because the totality of the circumstances governs the probable-cause inquiry, independent police investigation that corroborates the tipster's allegations can make up for these deficiencies: "It is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduce[s] the chances of a reckless or

prevaricating tale, thus providing a substantial basis for crediting the hearsay." *Id.* at 244-45 (internal quotation marks omitted); *accord id.* at 237-38, 241.

Finally, the affidavit must establish "a nexus between the place to be searched and the evidence to be sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (internal quotation marks omitted). "The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

Alderink's affidavit set forth the following relevant facts:

- Alderink has 13 years of law-enforcement experience, is currently a detective in a narcotics division, and is experienced in investigating narcotics cases.

- An anonymous tipster informed Silent Observer[1] on an unspecified date that Liem Hoang was growing marijuana in his basement at 6376 Glenstone Dr SE, Grand Rapids, MI 49546; that the tipster has seen the marijuana; that Liem lives at the Glenstone property with his ex-wife Natalia Hoang; and that Liem has a prior felony conviction involving ecstasy.

- Alderink verified through state records that Liem and Natalia lived at the Glenstone property.

- Alderink confirmed the tipster's statement that Liem had a prior felony conviction involving ecstasy. Liem was convicted in 2001 for importing MDMA.

- Alderink found a website printout about growing marijuana in the trash at the Glenstone property on April 29, 2009.

---

[1]Silent observer is a Crime Stoppers Program serving Kent County, Michigan that allows people to leave tips anonymously through the telephone or internet. *See* Silent Observer, http://www.silentobserver.org (last visited April 23, 2012).

- The utility records for the Glenstone property, which were in Liem's name, were obtained on April 23, 2009 and revealed that electricity use for the home increased between 27% and 131% per month between June 2008 and March 2009 as compared to the same month of the prior year. The average increase in electricity used for that 10-month period compared to the same period of the previous year was 64%.[2] The records showed the following usage in kilowatt hours:

| Month | 2007 | 2008 (% increase) | 2009 (% increase) |
|---|---|---|---|
| January | | 1,475 | 2,235 (52%) |
| February | | 1,508 | 1,960 (30%) |
| March | | 1,357 | 2,049 (51%) |
| April | | 1,594 | |
| May | | 1,654 | |
| June | 1,615 | 2,055 (27%) | |
| July | 1,536 | 2,746 (79%) | |
| August | 1,554 | 3,036 (95%) | |
| September | 1,323 | 3,051 (131%) | |
| October | 1,009 | 1,638 (62%) | |
| November | 941 | 1,860 (98%) | |
| December | 1,645 | 2,200 (34%) | |

---

[2]Both the government's brief and the district court calculated the percentage increases incorrectly in some cases. The largest monthly increase was during September 2008 compared to September 2007. Although the usage for September 2008 is 2.31 times that of the usage in September 2007, the *percentage increase* is 131%, not 230%. An 100% increase in a quantity means that it doubled in size. The average monthly increase stated as a percentage was computed by totaling up the usage from June 2008 to March 2009 and dividing that by the total usage from June 2007 to March 2008.

-         The grow lights used to cultivate cannabis plants indoors consume large amounts of electricity. And analyzing the amount of electricity used can reveal valleys and peaks because the amount of light needed can change depending on the grow cycle.[3]

Viewing the affidavit in the light most favorable to the government, the affidavit provided the state-court judge with a substantial basis for concluding that probable cause existed based on the totality of the circumstances. First, the affidavit contained specific information from an anonymous tip that evidence of a crime would be found at the Glenstone property. The tip identified where Liem lived, what precise illegal activity occurred at the property (growing marijuana), and where specifically he grew the marijuana within his residence (his basement). Moreover, because the tipster stated that he or she *saw* the marijuana growing in the basement, the tip disclosed the tipster's basis of knowledge. Second, the affidavit shows that police corroborated significant parts of the tipster's story. Alderink independently confirmed that the Hoangs lived at the Glenstone property and that Liem had a prior felony conviction involving ecstasy. Two other corroborative facts are even more important: Alderink found a website printout about how to grow marijuana in the Hoang's trash, and the utility records showed that the electricity used at the Glenstone property had increased sharply—averaging a 64% increase for the most recent 10 months compared to the same period of the previous year. And the spike in the electricity used was not uniform; it instead showed valleys and peaks—including one month where electricity use increased by 131% over the previous year—which the affidavit stated could indicate various stages in the grow cycle of cannabis plants that are cultivated indoors.

---

[3]The affidavit also sets forth the average electrical usage for two nearby residences, both of which use less electricity than the Hoangs' property. Because the affidavit provides no details about the other houses—not even their size—the comparisons could be of apples to oranges. Thus, the comparisons the affidavit offers between these properties are of dubious relevance.

The website printout and electricity use corroborate the anonymous tip that Liem was growing marijuana at the Glenstone property. *See United States v. Thomas*, 605 F.3d 300, 310, 310 n.9 (6th Cir. 2010) (holding that elevated electrical usage corroborated the informant's tip that the defendant was a marijuana grower). And this corroboration overcomes the problem posed by the anonymous tip not revealing the tipster's veracity, "thus providing a substantial basis for crediting the hearsay." *Gates*, 462 U.S. at 245 (internal quotation marks omitted); *accord id.* This "is enough, for purposes of assessing probable cause." *Id.* at 244. In sum, the affidavit provided the magistrate with a substantial basis for concluding that there was a fair probability that evidence of marijuana growing would be found at the Glenstone property.

Natalia and Liem's arguments to the contrary are not persuasive. They first challenge the tip itself based on the absence of facts establishing the tipster's veracity and the tip's staleness. On veracity, they point out that the affidavit did not—indeed, could not—establish the tipster's veracity because "[n]othing about the reliability of the tipster was, *or could have been*, included in the affidavit." (Emphasis added.) Because of this deficiency, they assert that the tip is entitled to little or no weight. But *Gates* teaches that while a tipster's veracity is relevant to determining probable cause, it is only one factor to consider in the totality-of-the-circumstances test, and any veracity deficiency may be overcome through other evidence corroborating the tipster's story or by a stronger showing of the tipster's basis of knowledge. *Id.* at 230, 233-34, 238, 241, 244-45. The website printout and the increase in electricity used corroborate the tip because they are both consistent with growing marijuana indoors. Extending the Hoang's argument to its logical conclusion would mean that anonymous tips could never be used—a conclusion contrary to the principles of *Gates*.

Turning to staleness, Natalia argues that there is no way to know from the tip when Liem was growing marijuana because the tip has no date or time frame. Stale information in an affidavit cannot contribute to a finding of probable cause. *Brooks*, 594 F.3d at 493. But whether an informant's tip is stale depends on several factors including the "character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), and the place to be searched (mere criminal forum of convenience or secure operational base?)." *Id.* (brackets and internal quotation marks omitted). In this case, the factors show that the tip is not stale: the crime of marijuana growing is ongoing, the Hoang's were established in their home, "the drugs were likely to be there for an indefinite period of time, and the place to be searched constituted a secure operational base." *United States v. Hammond*, 351 F.3d 765, 772 (6th Cir. 2003) (holding that a four-month old tip of marijuana growing was not stale for the same reasons). "Furthermore, information from an informant that is otherwise stale may be refreshed if the affidavit contains recent information that corroborates otherwise stale information." *Thomas*, 605 F.3d at 310 (brackets and internal quotation marks omitted). The website printout about growing marijuana and the utility records showing elevated electrical usage both refresh any staleness in the tip because these corroborative facts were obtained in late April 2009, about one month before the search warrant was issued. *See id.* (holding that elevated electrical usage both corroborated and refreshed the informant's tip that the defendant was a marijuana grower).

Essentially conceding that a tipster's lack of veracity can be overcome through police corroboration, the Hoangs next argue that the police did not sufficiently corroborate the tip by merely

confirming its innocent details. If corroboration had been limited to confirming Liem's address and

prior felony drug conviction, then the Hoangs would be correct because these details do not tend to

bolster the tip that Liem was currently growing marijuana at his residence. *See United States v.

Higgins*, 557 F.3d 381, 390 (6th Cir. 2009) ("[N]or did the police corroborate any of the informant's

statements beyond the innocent fact that Higgins lived at the stated location and the irrelevant (to

the determination of whether Higgins's house contained evidence of a present-day crime) fact that

Higgins had a criminal record."). But the website printout and the utility records do tend to bolster

the tip that marijuana was being grown at the Glenstone property because common sense indicates

that these are suspicious circumstances in light of the tip. And "probable cause requires only a

probability or substantial chance of criminal activity, not an actual showing of criminal activity."

*Gates*, 462 U.S. at 243 n.13. That it is legal to possess the website printout or that there are legal

explanations for such a sharp increase in electricity used is therefore not dispositive: "[I]nnocent

behavior frequently will provide the basis for a showing of probable cause[.] . . . In making a

determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent'

or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." *Id.*

Natalia's attempt to draw an analogy to *United States v. Clark*, 31 F.3d 831 (9th Cir.

1994)—which held that an affidavit did not support a finding of probable cause even though it

similarly set forth that Clark's electricity use was elevated—is not persuasive. *Clark* reasoned that

even if the electrical usage was high, such usage was "consistent with numerous entirely legal

activities" and thus could not support a finding of probable cause that Clark was growing marijuana.

*Clark*, 31 F.3d at 835. But the anonymous tip set forth in the affidavit in *Clark* contained "no

information regarding marijuana cultivation" and is thus entirely distinguishable from the present case, where the tip recounted that the tipster had seen Liem growing marijuana in the basement of his house. *Id.* at 835. And the present case also includes the website printout about growing marijuana. So while legal explanations exist for the increase in electricity in both *Clark* and the present case, the other facts listed in the affidavit before us make the conclusion that the electrical usage implies a marijuana-growing operation more reasonable in this case than in *Clark*.

The Hoangs' next argument is that the affidavit does not give enough detail about the nearby residences, which used less electricity than the Hoangs' residence, to draw conclusions from those differences in electrical usage. Although we agree, the affidavit allowed the issuing judge to compare the electricity used at the Glenstone property from one year to the next. The sharp increase beginning in June 2008, coupled with the other facts in the affidavit, reasonably suggests that marijuana was being grown on the property.

And contrary to the Hoangs' argument, the present case provides at least as strong if not stronger basis for finding probable cause than *Thomas*, which also found probable cause over a dissent. Although the informant in *Thomas* was named and the affidavit established that the informant had been reliable in the past, the information provided was that Thomas had a *reputation* as a grower and that the informant had seen Thomas conduct three sales of marijuana on the property eight months before the application for the search warrant. *Thomas*, 605 F.3d at 304-05. The dissent reasoned that the tip did not provide a basis to suspect that Thomas grew marijuana in addition to selling it, and that the records of increased electricity use could refresh only the reputation statement because that was connected to alleged marijuana growing (an ongoing activity by its nature), but

could not refresh the stale information of three sales (a discrete activity, unlike growing marijuana).

*See id.* at 315-17 (Moore, J., dissenting). Having a *reputation* as a grower coupled with increased electricity use was not enough because even if the informant were reliable, the reliable evidence was too weak to support a probability of finding a grow operation inside the house. *See id.* But those problems are not present in this case because the tipster recounted that he or she had seen the marijuana Liem was growing in the basement. This tip went far beyond mere reputation as a grower, and while both *Thomas* and this case relied on evidence of increased electricity use, this case also has the website printout to further corroborate the tip.

The totality of the circumstances recounted in the affidavit provided the issuing judge with a substantial basis for concluding that there was a fair probability that evidence of marijuana growing would be found at the Glenstone property. All of the Hoangs' arguments for suppressing the evidence seized as a result of the search warrant are unpersuasive. The Hoangs' motion to suppress evidence was properly denied. We therefore affirm the judgment of the district court.[4] This conclusion obviates the need to reach the issue of *Leon*'s good-faith exception to the warrant requirement.

### III. CONCLUSION

For all of the above reasons, we **AFFIRM** the judgment of the district court.

---

[4]With respect to Liem's challenge to the denial of his motion to suppress, the government contends that he waived the right to challenge this denial in his guilty plea. We need not decide this issue, however, because Liem's arguments on the merits of the suppression issue are subsumed in Natalia's arguments. Those arguments therefore fail for the same reason they fail for Natalia. So assuming without deciding that Liem did not waive his right to appeal the suppression decision, we affirm the denial of Liem's motion to suppress.

JAMES S. GWIN, District Judge, concurring.

Judge Stranch rightly affirms the district court's decision not to suppress the evidence at issue in this case. Generally, suppression is an inappropriate remedy when police officers, acting in good faith, obtain and rely on a warrant issued by a neutral judicial officer. Nevertheless, because I have some reservations about whether probable cause supported this search warrant, I concur only in the Court's judgment.

In this case, the state-court judge's decision to issue the search warrant relied upon: 1) an anonymous tip that the Hoangs were growing marijuana in their basement; 2) anomalous electrical-usage rates at the Hoang residence; and 3) an internet print-out about growing marijuana that was pulled from the trash cans at the Hoang residence. I assign little significance to the first: "The affidavit contains no assertion that this informant is known to be reliable, nor did the police corroborate any of the informant's statements beyond the innocent fact that [the defendant] lived at the stated location and the irrelevant . . . fact that [the defendant] had a criminal record." *United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009). And I question whether the printed suggestions for growing marijuana adds anything. Evidence that the Hoang residence had markedly strange electric use provides the only clear evidence of a marijuana grow. But even with the electrical use information, I question whether it was enough to provide a substantial basis to conclude that "there [was] a fair probability, given the totality of the circumstances, that contraband or evidence of a crime," would be found at the Hoang residence. *United States v. Howard*, 621 F.3d 433, 453 (6th Cir. 2010) (internal quotation mark omitted).

Regardless, the affidavit was not based on false information, the issuing judge was not biased, and the warrant was not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable[,] [or] so facially deficient . . . that the executing officers [could not have] reasonably presume[d] it to be valid." *United States v. Leon*, 468 U.S. 897, 914, 923 (1984) (internal citations and quotation marks omitted). Accordingly, I would affirm the district court's denial of the suppression motion under *Leon* alone.