**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-30110 |
| Plaintiff - Appellant, | D.C. No. 1:14-cr-00021-SPW-1 |
| v. | |
| HOWARD ORAN EMBRY, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Montana
Susan P. Watters, District Judge, Presiding
Carolyn S. Ostby, Magistrate Judge

Argued and Submitted July 9, 2015
Portland, Oregon

Before: PREGERSON, N.R. SMITH, and OWENS, Circuit Judges.

The United States appeals the district court's order adopting the findings and recommendations of a federal magistrate judge and granting Howard Embry's motion to suppress evidence. We have jurisdiction under 18 U.S.C. § 3731. We affirm.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1. "A search warrant is supported by probable cause if the issuing judge finds that, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (alteration in original) (internal quotation marks omitted). "We give great deference to an issuing judge's finding that probable cause supports a warrant and review such findings for clear error." *Id.* at 1081 (internal quotation marks omitted).

Police officers had no reason other than the uncorroborated, anonymous tip to suspect that Embry was in recent receipt of a trafficking amount of marijuana. "[A]n anonymous tip is entitled to *little or no weight* in a probable cause evaluation if it is entirely uncorroborated and lacks any indication of reliability." *United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994) (emphasis added).

Here, the anonymous tip was first conveyed to Embry's apartment manager who then relayed the information to the police officers. The anonymous tip conveyed a paucity of information. The tip did not mention Embry by name, state how the drugs arrived at his apartment, or explain how the informant acquired this information. The anonymous tip did not describe any future movements that could

be corroborated and the police officers did not corroborate the allegations made in the tip.

When the officers arrived at Embry's apartment they employed what they call the "knock and talk" approach. In response, Embry opened the door of his apartment and he engaged in a conversation with the officers. Embry acknowledged that he had a medical marijuana card and possessed a personal-use amount of marijuana, one ounce or less. The officer's "knock and talk" does not constitute independent corroboration because Embry's confirmation that he had a medical marijuana card and possessed a personal-use amount of marijuana is not sufficient to confirm the anonymous informant's statement concerning ten pounds of marijuana. *See Clark*, 31 F.3d at 834 ("Mere confirmation of innocent static details in an anonymous tip does not constitute corroboration."); *see also Underwood*, 725 F.3d at 1082 (holding that officers' knowledge of personal-use amount of marijuana "certainly does not indicate that [defendant] is an ecstasy *trafficker*." (emphasis in original)).

Because unreliable, uncorroborated tips are entitled to little or no weight when determining whether there is probable cause to support issuance of a search warrant, it was reasonable for the district court to excise the anonymous tip from its probable cause analysis. Thus, the officers did not have probable cause to

search for evidence of drug trafficking at Embry's apartment.[1]  Thereafter, the officers obtained a search warrant.

2. "Whether a search warrant describes items to be seized with sufficient specificity is reviewed de novo."  *United States v. Reeves*, 210 F.3d 1041, 1046 (9th Cir. 2000).  Here, the search warrant fails to meet the requirements of the test set out in *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986), for determining whether a warrant is "sufficiently precise."  As in *Spilotro*, the search warrant here "authorize[d] wholesale seizures of entire categories of items not generally evidence of criminal activity, and provide[d] no guidelines to distinguish items used lawfully from those the government had probable cause to seize."  *Id.* at 964.

It is clear that the search warrant here was aimed at uncovering evidence of drug trafficking, even though probable cause did not exist to support a search for evidence of drug trafficking.  The warrant permitted seizure of dangerous drugs, "including but not limited to methamphetamine, cocaine, marijuana and ecstasy, [and] Drug Paraphernalia as defined in" Montana statutes.  It further authorized seizure of "[b]ooks, records, receipts, notes, ledgers, and other papers relating to

---

[1] Probable cause, if it existed, was limited only to Embry's unlawful possession of a personal use amount of marijuana without a permit.

the transportation, ordering, purchasing, trafficking, possession, of controlled substances." It authorized seizure of all communications technology and records used "to facilitate drug transactions with . . . customers and/or suppliers." It authorized seizure of all records of Embry's travel. The warrant directed officers to seize address books and other records of "persons to whom dangerous drugs have been delivered to or obtained from," as well as any records that could be used to identify customers. It authorized seizure of all of Embry's financial records. The warrant even authorized the seizure of any and all photographs and digital media that could store photographs. Officers were entitled under the search warrant to seize Embry's phones and all of his phone records. Lastly, the warrant permitted seizure of any weapons found in the residence.

Because "the warrants here do not describe the items to be seized with sufficient particularity," the "warrants [are] invalid because of their general terms." *Id*.

3. The normal remedy for an overbroad warrant is to sever those portions that are overbroad, but our precedent does "not allow severance or partial suppression when the valid portion of the warrant is a relatively insignificant part of an otherwise invalid search." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 707 (9th Cir. 2009) (internal quotation marks omitted). Given that the

5

portions of the warrant aimed at trafficking are either inseparable from or predominate over the mere possession allegations, we cannot employ severance in this case and the warrant is invalid.

4. We have "refused to suppress evidence obtained under an invalid warrant if the officers obtaining the warrant and performing the search relied in good faith on the warrant's validity." *Clark*, 31 F.3d at 835. We "ask not what the executing officer believed, or could have believed, but whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006) (internal quotation marks omitted). "[T]he inquiry is one of objective reasonableness." *Clark*, 31 F.3d at 835.

Yet, the good faith exception cannot be used to rescue a search warrant that is facially overbroad, such as the one at issue here.[2] *See Spilotro*, 800 F.2d at 968.

5. Before applying the exclusionary rule, we consider "(1) whether suppression would affect the group conduct that the exclusionary rule was designed to punish, i.e., police misconduct; (2) the source of the error in the

---

[2] We cannot apply the good faith exception here because the officers did not act in good faith when they "seized evidence to the full extent of an overbroad warrant" by seizing evidence of drug trafficking, when there was not probable cause to support a search for evidence of drug trafficking. *Cf. United States v. Luk*, 859 F.2d 667, 677-78 (9th Cir. 1988)

particular case and whether any evidence suggested that the source, e.g., issuing magistrates, was inclined to ignore or subvert the Fourth Amendment; and (3) the basis for believing the exclusion of evidence will have a significant deterrent effect upon the source of the error." *Luk*, 859 F.2d at 675 (internal quotation marks and citations omitted). All three elements counsel in favor of applying the exclusionary rule here.

Because of their reliance on the uncorroborated, anonymous tip, police officers crafted a warrant for drug trafficking and carried out a search aimed at uncovering evidence of drug trafficking. First, suppression would punish the police officers' misconduct. Second, all of the errors in this case arise from the conduct of the police officers because the source of the error was the officers' reliance on the uncorroborated, anonymous tip. Third, a decision affirming the district court will have the significant deterrent effect on police misconduct that the exclusionary rule is meant to provide.

**AFFIRMED.**

*United States v. Embry*, No. 14-30110

OWENS, Circuit Judge, dissenting:

I respectfully dissent.

**1.** According to the majority, "Police officers had no reason other than the uncorroborated, anonymous tip to suspect that Embry was in recent receipt of a trafficking amount of marijuana." Yet this ignores two crucial facts. First, the apartment manager said that she smelled marijuana coming from the apartment. Second, Embry admitted that he had marijuana, but only for his own use. No law required the officers to buy Embry's story. The law is specifically to the contrary; police are not required to disprove a suspect's innocent explanations. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983) ("[I]nnocent behavior frequently will provide the basis for a showing of probable cause . . . ."). Indeed, based on the tip, they had every reason to disbelieve Embry. The majority never explains why the officers had to fall for this bogus story.

Based on the tip, the smell, and Embry's own words, the officers were entitled to rely in good faith on the warrant's validity. While these three facts obviously do not establish beyond a reasonable doubt that Embry was trafficking narcotics, probable cause requires far less. *See Gates*, 462 U.S. at 238, 246 (Probable cause exists if "given all the circumstances . . . , there is a fair probability

1

that contraband or evidence of a crime will be found in a particular place. . . . [P]robable cause does not demand the certainty we associate with formal trials."). The good-faith doctrine requires less still once a neutral magistrate judge has issued a search warrant. *See United States v. Leon*, 468 U.S. 897, 923 (1984) (officials may rely on a properly issued warrant unless it is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)) (internal quotation marks omitted)).

Imagine the following facts: An apartment manager receives a tip that an apartment is being used to abuse children. She hears young children crying for help. When the police talk to the tenant, he admits that there are young children in his apartment (and they are not his), but says he is running a modeling agency for minors who occasionally become scared and cry. Apparently the majority would say that the officers, if they executed a search warrant based on these facts, would be acting in bad faith. I know of no Supreme Court decision that supports this approach.

**2.** The majority also invokes *United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1986), to sweep the severability issue off the Fourth Amendment chessboard. Because the corroborated tip supported good faith reliance on the magistrate

judge's determination that there was probable cause of drug trafficking, the majority's conclusion that the warrant is facially overbroad cannot stand. And even if the majority is correct that the officials were not entitled to rely on the warrant as to drug trafficking because they witnessed only simple possession, *Spilotro* does not apply because evidence of marijuana possession formed a significant, severable part of the search warrant. *See United States v. SDI Future Health, Inc.*, 568 F.3d 684, 707 (9th Cir. 2009). "Because the record does not reflect a flagrant general search," any "violation [does not] require[] suppression of all of the evidence seized." *United States v. Sedaghaty*, 728 F.3d 885, 915 (9th Cir. 2013).

We must apply the exclusionary rule in the rarest of occasions. *See Hudson v. Michigan*, 547 U.S. 586, 591 (2006) ("Suppression of evidence . . . has always been our last resort, not our first impulse."). Obviously, this was not a perfect investigation, but imperfection does not equal suppression. *See Herring v. United States*, 555 U.S. 135, 144 (2009) ("[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct . . . ."). We should reverse the suppression order.